Submitted on motion to dismiss appeal. Motion overruled March 8, argued on the merits February 2, affirmed March 8, 1927.

## STATE v. MARK BROOM.

(253 Pac. 1042, 1044.)

Criminal Law—Person Committing Crime Within State and Withdrawing Himself Therefrom, Without Waiting to Abide Consequences, is "Fugitive from Justice."

1. Person committing crime within state and withdrawing from its jurisdiction, without waiting to abide consequences, is "fugitive from justice" of state whose laws he has broken.

---

1. See 11 R. C. L. 731.

Criminal Law—In Absence of Statute, Appellate Court may Refuse
   to Hear Appeal of Prisoner Escaping Pending Appeal, Al-
   though Bail was Given.

2.  In absence of statute, appellate court has discretion to hear
or not hear appeal of prisoner who escapes pending his appeal, re-
gardless of fact that bail had been given.

Criminal Law—Defendant, Appealing from Conviction for Either
   Misdemeanor or Felony, is not Required to Appear in Person
   in Appellate Court.

3.  Defendant, appealing from conviction of either misdemeanor
or felony, need not appear in person in appellate court, but in
either· case may appear by attorney.

Criminal Law—Where Conviction for Possessing Intoxicating Liquor
   was Upheld on Merits, Motion to Dismiss Appeal for Escape of
   Defendant from Custody may be Overruled.

4.  Where conviction for possessing intoxicating liquor is upheld
on appeal on the merits, dismissing appeal for escape of defendant
from jurisdiction, pending appeal, is not necessary, and motion there-
for may be overruled.

## ON THE MERITS.

Criminal Law—Disputes in Testimony and in Conclusions to be
   Drawn Therefrom are Settled by Verdict of Guilty.

5.  In prosecution for possession of intoxicating liquor, disputes
in testimony and in conclusions to be drawn therefrom are settled
by verdict of guilty.

Intoxicating Liquors—Instruction Permitting Jury to Consider That
   Defendant had Glass of Liquor in Hand, in Determining Whether
   He was Guilty of Possession of Other Liquor, was not Erro-
   neous.

6.  In prosecution for possession of intoxicating liquor, instruc-
tion that holding in hand glass of liquor for purpose of drinking
is not illegal possession, but such fact could be considered in de-
termining whether defendant had possession of bottle of liquor,
found in apartment in which he was arrested, was not error.

Witnesses—Excluding Questions Showing That State's Witness was
   Dealing in Moonshine Whisky Prior to Trial was not Error
   (Or. L., § 863).

7.  Under Section 863, Or. L., permitting witness to be im-
peached by evidence of conviction, but prohibiting evidence of
particular wrongful acts, in prosecution for possession of intoxicat-
ing liquor, sustaining objections to questions showing state's witness
had been dealing in moonshine whisky was not error, in absence
of attempt to show his conviction of any crime.

---

2.  Effect of escape on right to appeal, see note in 26 **L. R. A.**
(**N. S.**) 921.  See, also, 2 **R. C. L.** 63.

Criminal Law—Ruling on Motion for New Trial, in Criminal Case, cannot be Assigned as Error.

8. In criminal case, ruling of Circuit Court on motion for new trial cannot be assigned as error on appeal.

Criminal Law—In Proper Criminal Cases, Appellate Court may Refuse to Hear Appeal, Where Defendant Escapes from Custody Pending Appeal.

9. In proper cases it is competent, but not imperative, for appellate court to refuse to hear appeal from conviction, where defendant escapes from custody and becomes fugitive from justice.

Criminal Law—Where Case can be Properly Disposed of on Merits, Motion to Dismiss Appeal Because Defendant Escaped from Custody Pending Appeal may be Overruled.

10. Where appeal from conviction for possession of intoxicating liquor may be properly disposed of on the merits, motion to dismiss appeal because defendant had escaped from custody pending appeal and was fugitive from justice may be overruled.

Criminal Law, 17 C. J., p. 35, n. 53, p. 195, n. 12.
Extradition, 25 C. J., p. 258, n. 66.
Intoxicating Liquors, 33 C. J., p. 585, n. 97, p. 786, n. 50, 53, p. 787, n. 56, p. 792, n. 56.
Witnesses, 40 Cyc., p. 2596, n. 8, p. 2601, n. 37, p. 2607, n. 61, p. 2614, n. 7.

From Lane: G. F. SKIPWORTH, Judge.

In Banc.

This is a proceeding to dismiss an appeal, the motion for dismissal being predicated upon affidavits showing that the defendant is a fugitive from justice.

MOTION OVERRULED.

For the motion, *Mr. J. S. Medley,* District Attorney, and *Mr. Gordon S. Wells,* Deputy District Attorney.

*Contra,* no appearance.

BROWN, J.—The defendant was twice convicted in the Circuit Court of the State of Oregon for Lane County, for violations of the Prohibition Law, and, in

9. See 2 R. C. L. 63.

each case, was given a jail sentence and a fine. Both cases were appealed to the Supreme Court, and the defendant, thongh relieved from actual custody pending each appeal, was in constructive custody by virtue of his undertaking of bail upon appeal. The judgment of the lower court in the first appeal was affirmed in this court and its mandate was remitted to the Circuit Court in October, 1926. Thereupon, the trial court made the necessary order for the execution of its judgment. The defendant not appearing and surrendering himself to the custody of the law, the sheriff undertook to execute the directions of the order and take the defendant into custody, and, as a result thereof, located defendant in the Marion County jail at Salem, Oregon, where he was serving a sentence for a third crime against the Prohibition Law for which he was convicted subsequent to his convictions hereinbefore alluded to. On December 25, 1926, defendant broke jail and fled from the state, and neither the sheriff of Marion nor of Lane County, both of whom instituted a search, was able to take him into custody.

1. This brings us to the vital question in the case. In this connection, the following definition of the term "fugitive from justice," from a court of high repute, is pertinent:

"A person who commits a crime within a state and withdraws himself from such jurisdiction, without waiting to abide the consequences of such act, must be regarded as a fugitive from the justice of the state whose laws he has infringed." *In the Matter of Peter Voorhies,* 32 N. J. Law, 141.

See, also, *Hughes* v. *Pflanz,* 138 Fed. 980 (71 C. C. A. 234); *Ex parte Reggel,* 114 U. S. 642 (29 L. Ed. 250, 5 Sup. Ct. Rep. 1148).

The defendant has been convicted three times, and is an outlaw who has fled from the jurisdiction of this court, and, at this time, is a fugitive from the justice of this state. This fact gives rise to the following question: Can this fugitive from justice, from his concealed lair beyond the confines of this jurisdiction, invoke the power of this court to hear his cause upon appeal in the matter of his second conviction?

Cases are heard on appeal on the theory that, in the event of the appellate court's affirmance of the judgment, the defendant will submit himself to answer the judgment of the court, or, if the judgment be reversed, that the defendant will appear for trial.

2. The authorities abundantly sustain the proposition that, in the absence of a statute regulating the procedure, it is within the discretion of the court to hear or not to hear the appeal of a prisoner who escapes pending his appeal. See Smith v. United States, 94 U. S. 97, a leading case on this subject, where the United States Supreme Court, speaking through Mr. Chief Justice WAITE, wrote:

"It is clearly within our discretion to refuse to hear a criminal case in error, unless the convicted party, suing out the writ, is where he can be made to respond to any judgment we may render. * * If we affirm the judgment, he is not likely to appear to submit to his sentence. If we reverse it and order a new trial, he will appear or not, as he may consider most for his interest. Under such circumstances, we are not inclined to hear and decide what may prove to be only a moot case."

The books disclose many rulings of other courts holding to the doctrine that a fugitive from justice who has been convicted of crime shall not be permitted to prosecute an appeal to reverse the judgment of conviction, or be heard for any purpose,

unless he resubmits himself to the custody of the law and the jurisdiction of the court: See *Warwick* v. *State,* 73 Ala. 486 (49 Am. Rep. 59), overruling *Parsons* v. *State,* 22 Ala. 50, often cited in support of the contrary view; *People* v. *Redinger,* 55 Cal. 290 (36 Am. Rep. 32); *Anonymous,* 31 Me. 592; *Commonwealth* v. *Andrews,* 97 Mass. 544; *People* v. *Genet,* 59 N. Y. 80 (17 Am. Rep. 315); *Tyler* v. *State,* 3 Okl. Cr. 179 (104 Pac. 919, 26 L. R. A. (N. S.) 921); *Sargent* v. *State,* 96 Ind. 63, 9 Crim. Law Magazine, 439; *City of Portland* v. *Parchen,* 113 Or. 209 (231 Pac. 980). Moreover, that such escaped prisoner should not be granted the right to have an appeal prosecuted in his name is the doctrine laid down by many writers. The Court of Appeals of Alabama, in the recent case of *Lambert* v. *State* (Ala.), 108 South. 631, thus tersely summarizes the whole question:

"A fugitive from justice has no standing in the courts of this state.'

The case of *Martin* v. *State* (Okl. Cr. App.), 241 Pac. 832, is squarely in point. In that case, John Martin was tried, convicted and sentenced to serve 180 days in the county jail and to pay a fine of $500, for the unlawful possession of intoxicating liquor. He appealed. We assume that the appellant had given bail after his conviction, as provided by 1 Compiled Oklahoma Statutes, Sections 2811, 2922. The proof in support of the motion to dismiss showed that, at the time the motion was submitted, another criminal charge was pending against him in the courts of that state; that, when called for trial in the other case he had failed to appear and could not be found, and that he had last been seen in another jurisdiction. On the question of dismissal, the court held:

"Whenever a defendant in a case appealed to this court voluntarily places himself beyond its jurisdiction, so that the orders of this court cannot be enforced, the appeal will be dismissed."

Again, in treating of the rights of a prisoner who has escaped after appealing his case, a pre-eminent authority succinctly states:

"No steps in his behalf should ordinarily be permitted until he returns and submits to the law; *because the ends of justice may require him to be held to answer to some other proceeding should this. one be reversed.*" 1 Bishop's New Criminal Procedure, § 269, par. 3.

To the same effect, see 3 Wharton's Criminal Procedure (10 ed.), § 1708. In addition, this famous author of criminal law says:

"A writ of error will not be heard when the party suing it out has escaped from the jurisdiction of the court." 3 Wharton's Criminal Procedure (10 ed.), § 1708.

See, also, the wealth of authorities cited in the notes.

As adhering to the same doctrine, see 7 Encyclopedia of Pleading and Practice, p. 925, where the editors dispose of the subject in the following language:

"The general, if not universal, rule is for the court to refuse to consider such appeal, unless at the instance of the state."

3. The mere fact that the defendant has given a bail bond and is represented by counsel does not relieve him from the consequences of his escape and concealment. It is not necessary for an appealing defendant, whether convicted of a misdemeanor or a

felony, to appear in person in the appellate court. In either case he may appear by attorney. However, to set a precedent which enables a felon who has means or friends who will become his bail to take himself without the jurisdiction of the court by flight or concealment and await the determination of his case on appeal would, in the opinion of the writer, be poor law enforcement. If such policy is adopted by this court, it points the way to this class of criminals to go unwhipped of justice, because, to announce a doctrine that the criminal may flee to parts unknown after giving a bail bond, and there await the action of the appellate court on his appeal, would be virtually to put it within the power of the man of means to avoid the penalties fixed by law.

By taking bail in this case, the state accepted constructive, in lieu of actual, custody of the defendant, and consented to the exercise of control over him by his bondsmen: *United States* v. *Marrin,* 170 Fed. 476.

Now, what is the relation of the defendant and his bail? In the case of *Taylor* v. *Taintor,* 83 U. S. (16 Wall.) 366 (21 L. Ed. 287), Mr. Justice SWAYNE, delivering the opinion of the court, said:

"When bail is given, the principal is regarded as delivered to the custody of his sureties. Their dominion is a continuance of the original imprisonment. Whenever they choose to do so, they may seize him and deliver him up in their discharge; and if that cannot be done at once, they may imprison him until it can be done. * * 'The bail have their principal on a string, and may pull the string whenever they please, and render him in their discharge.' * * They may doubtless permit him to go beyond the limits of the state within which he is to answer, but it is unwise and imprudent to do so; and if any evil ensue, they must bear the burden of the consequences, and cannot cast them upon the obligee."

121 Or.—14

See, also, *State* v. *Crosby,* 114 Ala. 11 (22 South. 110); *Brown* v. *People,* 26 Ill. 28; *State* v. *Sandy,* 138 Iowa, 580 (116 N. W. 599); *United States* v. *Lee,* 170 Fed. 613.

4. We have made an intensive study of this subject. From such study, we are unqualifiedly committed to the doctrine announced by the highest authorities and the most eminent criminal law-writers of America, that, when it satisfactorily appears to the appellate court that a convicted criminal has fled from the jurisdiction of the court, it is within the power of that court to refuse to hear his appeal. But, while we have the power, in our discretion, to dismiss the appeal where the appellant is a fugitive from justice, this case having also been heard on the merits and therein affirmed, it is unnecessary to exercise our discretion by dismissing the appeal, and the motion is therefore overruled.          Motion Overruled.

Burnett, C. J., did not participate in this opinion.

---

On the Merits.

Affirmed.

For appellant there was a brief and oral argument by *Mr. F. C. Heffron.*

For respondent there was a brief over the name of *Mr. J. S. Medley,* District Attorney, with an oral argument by *Mr. Gordon S. Wells,* Deputy District Attorney.

BURNETT, C. J.—This is an appeal from a conviction in the Circuit Court of Lane County on a charge

of unlawfully possessing intoxicating liquor on June 1, 1925. From the testimony appended to the bill of exceptions it seems that the defendant was at large and that the sheriff of Lane County was searching for him in an endeavor to arrest him on a bench-warrant to enforce a previous conviction of a similar crime. The sheriff and district attorney of the county had employed a detective to locate the defendant so that the sheriff could arrest him. While in Albany, in Linn County, the detective ascertained that the defendant was going to Eugene, the county seat of Lane County, in the afternoon of June 1, 1925, and preceded the defendant to Eugene. In company with his son, another man and two ladies, the defendant arrived about 8 o'clock in the evening. The detective got in touch with the defendant in Eugene and states that the two had some conversation together while sitting in the detective's car in front of an apartment house where the defendant had gone to stay for the night. When he arrived at that apartment house he put his automobile in a garage appurtenant to the house. Those who went to Eugene with him, including the two ladies and the defendant's son, testified that there was no liquor in the car at all when they arrived. The detective, however, says that after the defendant's arrival there they met in the detective's car when he called at the apartment and the defendant produced a pint flask of whisky from which they both drank; that they then went into the house and to an upper room when the defendant produced another flask of whisky and offered drinks to those present including the ladies. After waiting some time for the officers to come to arrest the defendant, the detective made an excuse to leave the house, and did so, leaving the partly consumed flask of whisky on a drain board near the defendant. In a

short time the detective returned with the sheriff and several men, composing a posse, and when they entered the room, the defendant was discovered seated near the flask of whisky, which the detective says was produced by the defendant, with a partly filled glass of whisky in his hand. The sheriff arrested him, took charge of the flask of whisky, having poured the contents of the glass into it and took it away with him. His assistants outside the house, who had surrounded it to prevent the defendant's escape, found the door of the garage containing the defendant's car partly open and they examined the car and found in it three glass jugs of moonshine whisky, which they took away with them, together with the car. In brief, the detective contends that the defendant produced the small flask of whisky which they found in the apartment and the defendant contends that the detective produced it. The defendant maintains also that there was no whisky in his car when he drove it into the garage but the prosecution produces testimony that it was found in his car.

5. There is a very marked dispute in the testimony and in the conclusions to be drawn from it but those matters were settled by the verdict of the jury. The question is whether correct procedure was employed to arrive at that result.

6. The first error assigned is that the court was wrong in giving to the jury the following instruction:

"If you find from the evidence that the defendant held in his hand for the purpose of drinking it a small quantity of liquor, that, in and of itself, is not a violation of the law against possession of intoxicating liquor.

"However, you have a right to consider, if you find from the evidence in the case that the defendant, Mark Broom, at the time of his arrest in the Bailey

apartments, did have a glass in his hand containing some intoxicating liquor, you would have a right to consider this evidence together with all the other evidence in the case as to whether or not the defendant did, at the time and place alleged, have the three jugs in his possession, or the bottle found in the Bailey apartments in his possession. If you find that he did, it would be your duty to convict the defendant of the crime charged."

In *State* v. *Williams,* 117 Or. 238 (243 Pac. 563), the court was considering the question:

"Does the mere taking of a drink of intoxicating liquor, at the invitation of a friend, constitute unlawful possession of the same within the meaning of the statute?"

It was there held that this did not of itself constitute the possession of intoxicating liquor within the meaning of Section 2224—4, Or. L. That, however, is not all of the question here. As directed by the court, it is the duty of the jury to consider all of the circumstances of the case and all the actions of the defendant with relation to the whisky, and it is for the jury to determine whether the acts of the defendant as disclosed by the testimony were the acts of one exercising authority over the liquor or merely one who is accepting a small part as a drink. Taken in connection with other testimony, drinking part of it might partly indicate as a matter of fact that the person drinking it was the owner of it. We cannot in common sense exclude the drinking of part of it from the consideration of the jury. It is believed that those who actually buy and pay for liquor sometimes drink it and it may be possible that such actions would constitute the only purpose of having bought it, yet it would not do to exclude such an act of ownership from the consideration of the jury on a charge of un-

lawful possession of intoxicating liquor. In such a case the jury is entitled to consider all of the circumstances indicating the control and consumption of the liquor.

7. The next assignment of error is that the court sustained "objections to questions showing that state's witness Bafford was selling and dealing in moonshine whisky for some time prior to June 1, 1925." The rule is established in Section 863, Or. L., thus:

"A witness may be impeached by the party against whom he was called, by contradictory evidence, or by evidence that his general reputation for truth is bad; or that his moral character is such as to render him unworthy of belief, but not by evidence of particular wrongful acts; except that it may be shown by the examination of the witness or the record of the judgment that he has been convicted of a crime."

The record does not disclose that at the trial of this action there was any effort to show that the witness Bafford had been convicted of a crime. The statute forbids an attack upon him by the evidence of particular wrongful acts otherwise than in form of a regular conviction.

8. Finally, it is said that the "court erred in denying defendant's motion for a new trial." It is a platitude of long standing in this state that the ruling of the Circuit Court on a motion for new trial cannot be assigned as error on appeal: *State* v. *Foot You,* 24 Or. 61 (32 Pac. 1031, 33 Pac. 537).

9, 10. While this appeal from Lane County was pending in this court, it was made to appear by affidavit that the defendant had escaped from the Marion County jail in which he was then imprisoned on conviction of a similar crime in that county and was

still at large.  On that account the state moved to dismiss the defendant's appeal in this action.  In proper cases it is competent, but not imperative, for an appellate court to refuse to hear an appeal where the defendant escapes from custody and becomes a fugitive from justice.  The reason for the exercise of such authority is that the court, in its discretion, will decline to decide what may turn out in reality to be a moot case, since the defendant is not where the court may directly enforce its judgment upon him.  In this instance, however, the case may properly be disposed of on the merits without reference to the motion to dismiss the appeal.  Hence the motion is overruled and the judgment of the Circuit Court is affirmed.                                   AFFIRMED.

COSHOW, RAND and MCBRIDE, JJ., concur.