Argued and submitted November 15, 1993, appeal dismissed October 5, 1994

# STATE OF OREGON,
*Respondent,*

*v.*

# ROBERT O. LUNDAHL,
*Appellant.*

## (C85-02-30466; CA A76253)

882 P2d 644

James A. Glover argued the cause and filed the brief for appellant.

Janie M. Burcart, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Presiding Judge, and Richardson, Chief Judge, and Haselton,* Judge.

DEITS, P. J.

---

* Haselton, J., *vice* Durham, J.

## DEITS, P. J.

Defendant appeals his convictions of sexual abuse in the first degree, ORS 163.425, sodomy in the second degree, ORS 163.395, and sexual abuse in the second degree, ORS 163.415. He argues that the court erred by denying his motions for a mistrial. We dismiss the appeal.[1]

In February, 1985, defendant was indicted on the above charges for repeatedly sexually molesting an eleven-year-old girl who babysat his infant daughter. Defendant was tried in May, 1985, and the jury failed to return a verdict. He was tried again in August, 1985, and the jury convicted him on all three counts of the indictment. The court sentenced defendant to one year in jail on the misdemeanor, sexual abuse in the second degree, but required that defendant be evaluated at Oregon State Hospital before being sentenced on the two felonies. Over the state's objection, the court granted defense counsel's request that defendant be given a week's time to put his affairs in order before beginning his jail term. Although defendant was ordered to appear in court on October 22, 1985, he never appeared, and the state issued a warrant for his arrest. Apparently, defendant fled to Costa Rica with his third wife.

In April, 1992, after seven years in Costa Rica, defendant re-entered the United States and was captured in Miami on a fugitive warrant. In June, 1992, the judge who presided over the second trial sentenced defendant, who finally admitted his offenses, to ten years in prison on the sodomy conviction, with a five-year minimum, and to a consecutive five-year sentence on the first degree sexual abuse conviction. The court also confirmed the one-year jail sentence on the misdemeanor, imposed in 1985, and ordered that it be served concurrently with the prison sentences.

On appeal, defendant argues that he is entitled to a new trial on the ground that the court found one of the jurors to be "incompetent," thus denying him his right to a jury of twelve competent jurors. Although the state disagrees with the substance of defendant's argument, it contends that, by

---

[1] Because we dismiss the appeal on other grounds, we do not address the state's argument that the appeal of defendant's conviction for second degree sexual abuse is untimely.

escaping before sentencing and eluding capture for seven years, defendant has forfeited his right to appeal his convictions. The state asserts that the appeal, and the concomitant request for a third trial, should be dismissed.

We have previously exercised our discretion to dismiss the appeal of a defendant who was a "fugitive from justice." *State v. Sterner*, 124 Or App 439, 862 P2d 1321 (1993), *rev den* 318 Or 583 (1994). In *Sterner*, we concluded that despite a defendant's statutory right to a criminal appeal,[2] "[a] criminal defendant should not be able to enjoy the benefits of the law while unlawfully avoiding its rigor." 124 Or App at 443.[3] Our conclusion was based on Oregon Supreme Court cases, *State v. Smith*, 312 Or 561, 822 P2d 1193 (1992); *State v. Broom*, 121 Or 202, 253 P 1042, 253 P 1044 (1927); *City of Portland v. Parchen*, 113 Or 209, 231 P 980 (1925), and is consistent with the fugitive dismissal rule adopted by the United States Supreme Court, *Ortega-Rodriguez v. United States*, 507 US___, 113 S Ct 1199, 122 L Ed 2d 581, 593 (1993),[4] and many state courts. *See, e.g., State v. Gurican*, 576 So 2d 709 (Fla 1991); *People v. Partee*, 125 Ill

---

[2] ORS 138.020 provides:

"Either the state or the defendant may as a matter of right appeal from a judgment in a criminal action in the cases prescribed in ORS 138.010 to 138.310, and not otherwise."

ORS 138.040 provides, in part:

"Except as provided under ORS 138.050 [concerning a defendant who has pleaded guilty or no contest], the defendant may appeal to the Court of Appeals from a judgment or order described under ORS 138.053 in a district or circuit court * * *."

[3] Since *State v. Sterner, supra*, was decided, ORAP 8.05(3) has been adopted. That rule provides:

"If a defendant in a criminal case, a petitioner in a post-conviction relief proceeding, a plaintiff in a habeas corpus proceeding, a petitioner in a parole review proceeding, or a petitioner in a prison disciplinary case, on appeal of an adverse decision, escapes or absconds from custody or supervision, the respondent on appeal may move for dismissal of the appeal. If the appellant has not surrendered at the time the motion is decided by the court, the court shall allow the motion and dismiss the appeal or judicial review."

[4] In *Ortega-Rodriguez v. United States, supra*, the Court noted that its cases "consistently and unequivocally approve dismissal as an appropriate sanction when a prisoner is a fugitive during 'the ongoing appellate process.' " 507 US at___, 122 L Ed 2d at 593. In an earlier case, the Court had upheld the constitutionality of a Texas statute providing for automatic dismissal of appeals by defendants who escape during the pendency of their appeals without voluntarily returning within 10 days. *Estelle v. Dorrough*, 420 US 534, 95 S Ct 1173, 43 L Ed 2d 377 (1975).

2d 24, 530 NE2d 460 (1988); *State v. Wright*, 763 SW2d 167 (Mo App 1988); *State v. Johnson*, 105 Wash 2d 92, 711 P2d 1017 (1986); *State v. Rogers*, 189 W Va 730, 434 SE2d 402 (1993); *State v. Bono*, 103 Wis 2d 654, 309 NW2d 400 (Wis App 1981).

The fugitive dismissal rule, however, does not resolve the issue before us, which is whether we may dismiss the appeal of a *former* fugitive. Although this is a case of first impression for Oregon courts, the United States Supreme Court has addressed the issue, and we believe its analysis provides helpful guidance. In *Ortega-Rodriguez v. United States, supra*, the Court examined the justification for the federal fugitive dismissal rule to determine whether the same rationale would support a rule mandating dismissal of appeals by defendants whose flight and recapture occur before they invoke the appellate process. A majority of the Court concluded that the interests served by the fugitive dismissal rule do not support a rule of *automatic* dismissal for appeals filed by former fugitives.[5] 507 US at ___, 122 L Ed 2d at 597.

■ However, the Court went on to hold that although an appellate court should not automatically dismiss appeals of former fugitives, it is not wholly without authority to dismiss such appeals. The Court explained that dismissal may be an appropriate sanction where the defendant's former fugitive status significantly interferes with the operation of the appellate process. As the Court stated:

> "We do not ignore the possibility that some actions by a defendant, though they occur while his case is before the district court, might have an impact on the appellate process sufficient to warrant an appellate sanction. For that reason,

---

[5] The interests identified by the Court as being served by the fugitive dismissal rule are: risk of unenforceability, efficient operation of the appellate process, protection of the dignity of the appellate court and deterrence. *Ortega-Rodriguez v. United States, supra*, 507 US at ___, 122 L Ed 2d at 593-96. In a dissenting opinion, four members of the Court disagreed with the majority's conclusion that, unless a defendant's flight from justice occurs while the Court of Appeals has jurisdiction over the case, the flight has no impact on the appellate process. Accordingly, the dissenters believed that dismissal of former fugitives' appeals is supported by an interest in the administration of justice, in deterring flight and encouraging voluntary surrender, and in promoting respect for the judicial process, of which the appellate process is an integral part. 507 US at ___, 122 L Ed 2d at 600-02 (Rehnquist, C. J., dissenting).

we do not hold that a court of appeals is entirely without authority to dismiss an appeal because of fugitive status predating the appeal. For example, the Eleventh Circuit * * * expressed concern that a long escape, even if ended before sentencing and appeal, may so delay the onset of appellate proceedings that the Government would be prejudiced in locating witnesses and presenting evidence at retrial after a successful appeal." 507 US at ___, 122 L Ed 2d at 597 (citing *United States v. Holmes*, 680 F2d 1372, 1374 (11th Cir 1982), *cert den* 460 US 1015 (1983)).

■ · The circumstances here are of the type identified by the Supreme Court as justifying the dismissal of a former fugitive's appeal. If we were to resolve the merits of this appeal in defendant's favor, he would be entitled to a new trial. Because of his lengthy escape, ten years will have passed between the time that he committed the charged offenses and the time of his re-prosecution. The victim is now a 22-year-old woman who has spent several years in counseling trying to deal with the trauma that defendant now admits he inflicted upon her when she was a child. Further, as the state notes, a jury may respond very differently to the testimony of an adult woman than it would to the same events as recounted by an 11-year-old girl. The state would also be prejudiced by having to locate witnesses who testified in 1975, including a staff member of the state Children's Services Division and the young boy, now age 19, to whom the victim first reported that she had been molested. Even assuming that those witnesses could be located, their memories of the event have likely diminished.

For all of the above reasons, we conclude that defendant's lengthy escape from justice, though it occurred while his case was pending before the trial court, significantly interfered with the appellate process and warrants an appellate sanction. *Accord State v. Brown*, 116 NM 705, 866 P2d 1172, *cert den* 116 NM 553 (1993) (dismissing former fugitive's appeal where 13-year absence delayed sentencing and the onset of the appellate process and caused a transcript of the trial to be unavailable).

Appeal dismissed.