On respondent's Motion to Dismiss filed January 24, appeal dismissed
August 14, 1996

In the Matter of Jolene Linder, a Child.

STATE ex rel JUVENILE DEPARTMENT
OF MULTNOMAH COUNTY,
*Respondent,*

*v.*

Jolene LINDER,
*Appellant.*

(9311-83526; CA A86362)

922 P2d 691

Theodore R. Kulongoski, Attorney General, Virginia L. Linder, Solicitor General, and Janet A. Metcalf, Assistant Attorney General, for motion.

Daniel A. Cross and Saxon, Marquoit & Bertoni *contra*.

Before Landau, Presiding Judge, and Haselton and Armstrong, Judges.

HASELTON, J.

**HASELTON, J.**

Child appeals from a judgment finding her to be within the jurisdiction of the juvenile court. The state has moved to dismiss because child absconded from custody during the pendency of the appeal. We grant the motion to dismiss.

In September 1994, the juvenile court found that child had committed acts that, if committed by an adult, would constitute the offenses of robbery in the first degree, ORS 164.415; assault in the fourth degree, ORS 163.160; and unauthorized use of a motor vehicle, ORS 164.135. The court committed child to Hillcrest School; she was later released to Christie School. In November 1994, child appealed. On January 16, 1996, shortly after her 15th birthday, child absconded from Christie School. On January 24, 1996, the state moved to dismiss the appeal. After the state moved to dismiss, child was apprehended in San Diego and was ultimately returned to Oregon on February 7, 1996. Child is now in custody.

■   The state argues that child's flight during the pendency of the appeal compels dismissal and that her involuntary return to custody before disposition of its motion is immaterial. The state posits an absolute, prophylactic rule under which the appellant's youth is immaterial.

Child responds that there is no such bright-line rule. Instead, child asserts, dismissal after a child appellant has absconded is a matter of discretion. Child asserts that, in exercising our discretion, we should deny dismissal here for two reasons: (1) Her appeal presents an issue of first impression, and the court should balance the benefit of providing an opinion on that issue against the need to sanction child. (2) Child was absent for a relatively short time, approximately three weeks, before being apprehended. Child does not contend that her youth should be a factor in our decision.

ORAP 8.05(3) generally addresses dismissal where an appellant has absconded:

"If a defendant in a criminal case, a petitioner in a post-conviction relief proceeding, a plaintiff in a habeas corpus

proceeding, a petitioner in a parole review proceeding, or a petitioner in a prison disciplinary case, on appeal of an adverse decision, escapes or absconds from custody or supervision, the respondent on appeal may move for dismissal of the appeal. If the appellant has not surrendered at the time the motion is decided by the court, the court shall allow the motion and dismiss the appeal or judicial review."

However, that rule does not, by its terms, govern this motion, because the absconding person here—a child in a juvenile proceeding—does not fall within the five classes of persons the rule expressly encompasses. Accordingly, we turn for guidance to pre-ORAP 8.05(3) case law addressing the appellate courts' inherent dismissal authority.[1]

For more than 70 years, Oregon's appellate courts have asserted an inherent discretionary authority to dismiss cases in which appellants have absconded. *See City of Portland v. Parchen*, 113 Or 209, 210, 231 P 980 (1925) ("It is a substantial and just rule that courts will not hear an appeal while the appellant is fleeing from justice."); *State v. Broom*, 121 Or 202, 206, 253 P 1042 (1927) ("[I]n the absence of a statute regulating the procedure, it is within the discretion of the court to hear or not to hear the appeal of a prisoner who escapes pending his appeal."). The Oregon Supreme Court first articulated that authority in cases in which appellants/fugitives had not been returned to custody, but, instead, remained at large. The court noted, *inter alia*, that dismissal in such cases could be appropriate because such appellants would not be amenable to any appellate judgment. *See Broom*, 121 Or at 206 ("Cases are heard on appeal on the theory that, in the event of the appellate court's affirmance of the judgment, the defendant will submit himself to answer

---

[1] Reference, by analogy, to ORAP 8.05(3), *could* inform our exercise of our inherent authority. However, we conclude that, given the particular purposes of the juvenile system, which distinguish it from the adult criminal system, analogy is inapt in this case. *See* ORS 419A.002(2); ORS 419C.001(1). *Accord State ex rel Juv. Dept. v. Reynolds*, 317 Or 560, 567-74, 857 P2d 560 (1993) (reviewing history of juvenile proceedings in Oregon and then-current juvenile code and concluding that "[j]uvenile courts are concerned with rehabilitation, not punishment"); *see also State v. Stewart / Billings*, 321 Or 1, 9-10, 892 P2d 1013 (1995) (reiterating *Reynolds'* analysis). The sort of *per se* approach that ORAP 8.05(3) prescribes would not comport with those rehabilitative ends so well as an approach that permits assessment of a child's particular circumstances.

the judgment of the court, or, if the judgment be reversed, that the defendant will appear for trial."). In *State v. Sterner*, 124 Or App 439, 442, 862 P2d 1321 (1993), *rev den* 318 Or 583 (1994), we held that appellants' statutorily-conferred entitlement to appeal did not trump or qualify that dismissal authority. *See also id.* at 443 ("A criminal defendant should not be able to enjoy the benefits of the law while unlawfully avoiding its rigor."). *But see id.* at 443 (Durham, J., concurring) (questioning whether "this court has discretion to dismiss an appeal, notwithstanding the defendant's statutory right to appeal").[2]

Until 1994, neither we nor the Oregon Supreme Court ever asserted inherent authority to dismiss an appeal where the absconding appellant was returned to custody *before* the disposition of the motion to dismiss. However, in *State ex rel Juv. Dept. v. Merrell*, 126 Or App 708, 870 P2d 250 (1994), we asserted and enforced such authority. *Merrell* is quite similar to this case. There, the appellant-child absconded during the pendency of his appeal, and the state moved to dismiss. Six months after he absconded, and before we had ruled on the motion to dismiss, the child turned himself in. Notwithstanding the child's voluntary return, we granted the motion to dismiss:

> "Child argues that he 'is emotionally immature' and 'should not be held to the same standard as an adult criminal defendant.' He further asserts that the state's motion should be denied, because he is no longer a fugitive. We disagree. Child is 17 years old. He is of sufficient age to understand that absconding from parole is an unlawful act of serious magnitude. In addition, child was not simply a 'runaway' for a few days or few weeks, he was 'missing' and a fugitive in every sense of the word for six months. The fact that he returned to custody before we acted on the state's motion is of no significance. In the light of these circumstances, child 'should not be able to enjoy the benefits of the

---

[2] *See also id.* at 444:

"*Broom* and *Parchen* provide thin support for the majority's result. Those decisions suggest that an appellate court has discretion to dismiss a fugitive's appeal, but the court's statements appear to be *dicta*, and give no insight into the possible countervailing effect of the defendant's unconditional statutory right to appeal."

law while unlawfully avoiding its rigor.' *State v. Sterner,* *supra,* 124 Or App at 433." *Merrell,* 126 Or App at 711.[3]

Thus, in *Merrell,* we did not adopt and apply a *per se* rule that, in juvenile cases, an appellant's flight during the pendency of the appeal triggers automatic dismissal. If we had, our discussion of the child's capacity to understand the seriousness and implications of his conduct would have been gratuitous. Instead, it is at least implicit in *Merrell* that, in appropriate cases, the child's lack of such understanding could militate against dismissal.

Although it is factually distinct, *State v. Lundahl,* 130 Or App 385, 882 P2d 644 (1994), confirms that view. There, we considered for the first time our authority to dismiss the appeals of *"former* fugitives"—that is, persons who absconded after conviction and *before* sentence and appeal, rather than during the pendency of an appeal. In *Lundahl* itself, the defendant, who had absconded after being convicted, but before being sentenced for sex abuse, was recaptured seven years later. He was then sentenced and filed an appeal. On the state's motion, we dismissed the appeal.

In so holding, we referred to *Ortega-Rodriguez v. United States,* 507 US 234, 113 S Ct 1199, 122 L Ed 2d 581 (1993), which addressed the dismissal of "former fugitive" appeals in the federal courts, and noted that the "former fugitive" context was substantively distinguishable from the straightforward "fugitive" dismissal situation addressed in *Parchen, Broom,* and *Sterner.* In particular, the interests that *Ortega-Rodriguez* identified as underlying the "fugitive" dismissal rule in the federal courts and most of the jurisdictions—*i.e.,* "risk of unenforceability, efficient operation of the appellate process, protection of the dignity of the appellate court and deterrence"—did not mandate *automatic* dismissal of appeals filed by former fugitives. *Lundahl,* 130 Or App at 389 n 5. We nonetheless concluded that the defendant's

---

[3] The motion to dismiss in *Merrell* was filed before the effective date of ORAP 8.05(3). Accordingly, our opinion did not refer to that rule, much less address its applicability to appeals of juvenile adjudications.

lengthy flight had so compromised the availability and enforceability of meaningful appellate relief[4] that dismissal was warranted. *Id.* at 389-90.[5]

Although factually distinct, *Lundahl*'s reference to "protection of the dignity of the appellate court and deterrence," *id.* at 389 n 5, parallels *Merrell*'s analysis. A person cannot consciously offend "the dignity of the appellate court" or be deterred from flight unless he or she appreciates the seriousness of absconding. So, too, in *Merrell*: The principle that one " 'should not be able to enjoy the benefits of the law while unlawfully avoiding its rigor,' " *Merrell*, 126 Or App at 711 (quoting *Sterner*, 124 Or App at 443), is sensible only if the child understands the consequences of flight.

■ We thus reiterate that the flight of a child appellant does not automatically trigger dismissal. Where, as here, the child has returned, or has been returned, to custody before the disposition of the motion, the child can avoid dismissal by demonstrating that he or she lacked the capacity "to understand that absconding * * * is an unlawful act of serious magnitude." *Id.* at 711. Here, child made no such showing—and, indeed, did not suggest that, because of her age and circumstances, she did not understand the seriousness of her flight. Accordingly, we exercise our discretion and grant the state's motion to dismiss the appeal.

Appeal dismissed.

---

[4] We noted, *inter alia*, that Lundahl sought a new trial and that, if we were to allow such relief, the state would be greatly disadvantaged by the passage of time in relitigating the case. *Id.* at 390.

[5] Lundahl noted, but did not invoke, ORAP 8.05(3). Id. at 388 n 3. Because that rule pertains only to flight after the filing of an appeal or petition for review, it is inapposite to "former fugitive" appeals.