*47 LANDAU, J.
Oregon’s fugitive dismissal rule, ORAP 8.05(3), provides that, when a criminal defendant has absconded during the pendency of an appeal, an appellate court may dismiss the appeal, as long as the defendant “has not surrendered” at the time of the dismissal. In this case, defendant filed a notice of appeal and then absconded. The state moved to dismiss. In the meantime, defendant was arrested and returned to custody. On the basis of his return to custody, defendant opposed the motion to dismiss, arguing that he had “surrendered.” The state responded that the mere fact that an absconding defendant has been apprehended by police is not sufficient to establish that he has “surrendered” within the meaning of the rule. The Court of Appeals agreed with the state and dismissed the appeal. We allowed defendant’s petition for review and, for the reasons that follow, affirm the order of dismissal.
The relevant facts are uncontested. In February 2009, after his convictions for interfering with a peace officer, disorderly conduct, and criminal trespass, defendant was sentenced to 24 months’ probation, the conditions of which included payment of fines and fees in accordance with a payment schedule and completion of community service. Defendant timely appealed, challenging the conviction for disorderly conduct.
Meanwhile, defendant failed to complete community service and failed to pay the fines and fees as agreed. On July 15, 2010, the trial court issued an order to show cause why defendant’s probation should not be revoked, directing defendant to appear on August 17, 2010. Defendant did not appear as directed. The trial court found that defendant “has absconded from probation” and issued a bench warrant for defendant’s arrest. Three days later, on August 20, 2010, the state filed a motion to dismiss defendant’s appeal pursuant to ORAP 8.05(3) on the ground that defendant had absconded.
On September 2, 2010, defendant filed a response in opposition to the state’s motion. He did not challenge the state’s assertion that he had absconded. Rather, he argued that dismissal was no longer permitted because he had “surrendered” within the meaning of the rule in light of his *48 return to custody. In support of that contention, defendant submitted a copy of an OJIN printout, indicating that the police had served him with an arrest warrant on August 22, 2010, and that he had appeared before the trial court the following day.
The Court of Appeals dismissed the appeal. Defendant petitioned for review, arguing that the Court of Appeals erred. His return to custody, he argues, constitutes “surrender” within the meaning of ORAP 8.05(3) and thus precludes dismissal of the appeal. The state responds that the rule requires more than merely having been arrested to constitute the sort of “surrender” that precludes the dismissal of an absconding defendant’s appeal. Thus framed, the issue is one of interpretation; specifically, the interpretation of the term “surrender” as it is used in ORAP 8.05(3). In State v. Robbins, 345 Or 28, 188 P3d 262 (2008), this court resolved a dispute concerning the interpretation of a different portion of ORAP 8.05(3) by applying the rules of interpretation that ordinarily apply to statutes and administrative rules. We follow that example in this case.
Accordingly, we begin with the text of the rule, which provides, in part:
“If a defendant in a criminal case, *** on appeal of an adverse decision, escapes or absconds from custody or supervision, the respondent on appeal may move for dismissal of the appeal. If the appellant has not surrendered at the time the motion is decided by the court, the court may dismiss the appeal ** *. If the court has not been advised otherwise, the court may assume that the appellant has not surrendered when the court considers and decides the motion.”
ORAP 8.05(3). When a disputed term in a statute or rule is undefined by that rule, we assume that it partakes of its ordinary meaning. See, e.g., State v. Murray, 340 Or 599, 604, 136 P3d 10 (2006) (“Absent a special definition, we ordinarily would resort to dictionary definitions, assuming that the legislature meant to use a word of common usage in its ordinary sense.”).
The term “surrender” has a variety of different “ordinary” meanings:
*49 “vt 1 : to make a surrender in law of : as a : to give up (an estate) to the holder in remainder or reversion b : to relinquish (as rights or claims under a patent) to the grantor c : to deliver (the principal) into lawful custody 2 a: to yield to the power, control, authority, or possession of another : give or deliver up possession of upon compulsion or demand : cease trying to retain or control and agree to yield * * * b : to give up completely or agree to forgo esp. in favor of another : abandon, resign, or relinquish possession of usu. for the sake of another : assent to loss of possession or exercise of or power or control over *** 3 a : to give (oneself) up into the power of another esp. as a prisoner b : to give (oneself) over to something * * * vi: to give oneself up into the power of another : YIELD * *
Webster’s Third New Int’l Dictionary 2301-02 (unabridged ed 2002). Some of the definitions seem consistent with defendant’s proposed reading of the rule. For example, the definition, “to yield to the power, control, authority, or possession of another,” seems consistent with defendant’s contentions in this case. Other definitions, however, are consistent with the state’s proposed reading of the rule. The first definition states that the term means “to make a surrender in law of : as *** to deliver (the principal) into lawful custody.” Similarly, an alternate definition is “to give up completely or agree to forgo.” In both examples, the term “surrender” is used to refer to a voluntary act of delivery or relinquishment, not in response to force or compulsion.
Oregon statutes reflect the same variety of usages that the dictionary definitions spell out. Some statutes use the term in a sense that is arguably close to the one that defendant proposes. ORS 398.348(2), for example, authorizes a court martial to punish a person “who before or in the presence of the enemy” either “surrenders or delivers up any command.” Others use the term in the sense of an intentional voluntary act, one that is not taken in response to force or compulsion. ORS 73.0604(l)(a), for example, provides that a person entitled to enforce an instrument may discharge the obligation of another to pay that instrument “[b]y an intentional voluntary act, such as surrender of the instrument.”
Similarly, statutes pertaining to criminal law, custody, and appeal use the term “surrender” to refer to *50 voluntary — and not compelled — relinquishment or delivery. Statutes concerning extradition of criminal defendants, for example, provide that “the Governor, at the discretion of the Governor, either may surrender the person on the demand of the executive authority of another state or may hold the person until the person has been tried and discharged, or convicted and punished in this state.” ORS 133.817. Clearly, the Governor’s act of “surrendering” the defendant is a voluntary — indeed, expressly discretionary — act. ORS 135.280, which governs the failure of a defendant to comply with the terms of a release agreement, provides that the court may issue a notice of forfeiture of any security that the defendant has posted and, if “the defendant does not appear or satisfy the court having jurisdiction that appearance and surrender by the defendant was, or still is, impossible and without fault of the defendant, the court shall enter judgment for the state [.]”
What the foregoing demonstrates is that the rule is at least ambiguous. The interpretations proffered by both defendant and the state are plausible, in the sense that they are consistent with ordinary meaning and with usage in various state statutes. The question for us is which of those multiple possible senses of the word “surrender” is the one likely intended by those who adopted the rule. See State v. Cloutier, 351 Or 68, 96, 261 P3d 1234 (2011) (“Dictionaries, after all, do not tell us what words mean, only what words can mean, depending on their context and the particular manner in which they are used.” (Emphasis in original.)). We answer that question by considering the context within which the rule was adopted. Robbins, 345 Or at 34-37 (considering context of adoption of ORAP 8.05(3)).
What is known as “the fugitive dismissal rule”— or in some jurisdictions, “the fugitive disentitlement doctrine” — is an equitable doctrine that dates back to the late-nineteenth century. See generally Mitchell Waldman, Annotation, Application of “Fugitive Disentitlement Doctrine” in Federal Civil Actions, 176 ALR Fed 333 (2002); Anthony Michael Altman, The Fugitive Dismissal Rule: Ortega-Rodriguez Takes the Bite Out of Flight, 22 Pepp L Rev 1047, 1049-53 (1995) (discussing historical development of “the fugitive dismissal rule”); Jason W. Joseph, The Fugitive *51 Dismissal Rule Applied to Pre-Appeal Fugitivity, 84 J Crim L & Criminology 1086, 1086-91 (1994) (same). Under that long-established legal principle, appellate courts possess inherent authority to dismiss a defendant’s appeal if that defendant has absconded from the court’s jurisdiction.
Courts have identified several rationales for the rule. The initial justification for the rule was the unenforceability of judgments against a fleeing defendant. See, e.g, Smith v. United States, 94 US 97, 97, 24 L Ed 32 (1876) (“It is clearly within our discretion to refuse to hear a criminal case in error, unless the convicted party *** is where he can be made to respond to any judgment we may render.”).
But the courts invoking the rule were quick to add a second consideration, namely, the fact that absconding from an appellate court’s jurisdiction amounted to a waiver — or a “disentitlement” — of the right to pursue the appeal. As the United States Supreme Court explained in Molinaro v. New Jersey, 396 US 365, 366, 90 S Ct 498, 24 L Ed 2d 586 (1970),
“No persuasive reason exists why this Court should proceed to adjudicate the merits of a criminal case after the convicted defendant who has sought review escapes from the restraints placed upon him pursuant to the conviction. While such an escape does not strip the case of its character as an adjudicable case or controversy, we believe it disentitles the defendant to call upon the resources of the Court for determination of his claims.”
(Emphasis added.)[1] More recently, in Ortega-Rodriguez v. United States, 507 US 234, 240, 113 S Ct 1199, 122 L Ed 2d 581 (1993), the Supreme Court explained that “ [e] nforceability is not * * * the only explanation we have offered for the fugitive dismissal rule.” Citing Molinaro, the court explained that, “the rule allowing dismissal of fugitives’ *52 appeals has rested in part on enforceability concerns, and in part on a ‘disentitlement’ theory that construes a defendant’s flight during the pendency of his appeal as tantamount to waiver or abandonment.” Ortega-Rodriguez, 507 US at 240.
Most courts applying a fugitive dismissal rule have adopted the rationale referred to in Molinaro and Ortega-Rodriguez that, aside from the fact that allowing an absconding defendant to proceed with an appeal creates enforceability problems, such a defendant who flees from a court’s jurisdiction waives or forfeits the right to proceed with the appeal. See generally James L. Buchwalter, Annotation, Effect of Escape by, or Fugitive Status of, State Criminal Defendant on Availability of Appeal or Other Post-Verdict or Post-Conviction Relief- — State Cases, 105 ALR 5th 529, 573-98, § 11 (2003 & Supp 2009). In such jurisdictions, even the eventual recapture of an absconding criminal defendant does not lead to the reinstatement of the appeal. As one court representative of that view explained, “[i]n escaping, appellant has demonstrated his contempt for the justice system of which the appellate court is one part. Merely because — no thanks to him — he is recaptured, it is not evident that he regains the right to review that he earlier forfeited.” U.S. v. Puzzanghera, 820 F2d 25, 26 (1st Cir), cert den, 484 US 900 (1987).
Moreover, as has been noted by many courts, refusing to reinstate an appeal following recapture discourages escapes, encourages voluntary surrender, and promotes the efficient operation of the courts. See, e.g., Degen v. United States, 517 US 820, 824, 116 S Ct 1777, 135 L Ed 2d 102 (1996) (“Disentitlement ‘discourages the felony of escape and encourages voluntary surrenders’ and ‘promotes the efficient dignified operation’ of the courts.” (Quoting Estelle v. Dorrough, 420 US 534, 537, 95 S Ct 1173, 43 L Ed 2d 377, reh’g den, 421 US 921 (1975).)); State v. Moran-Soto, 150 Idaho 175, 179, 244 P3d 1261 (Idaho App 2010) (“[Dismissal discourages escapes and encourages fugitives to surrender.”); Reid v. Commonwealth, 57 Va App 42, 53-54, 698 SE2d 269 (2010) (same).
Some courts take a more limited view of the fugitive dismissal rule. They reject the waiver or forfeiture rationale *53 and hold instead that the enforceability of appellate judgments is the sole purpose of the rule. Those courts regard recapture as grounds for reinstating a previously absconding criminal defendant’s appeal. See, e.g., People v. Estrada, 570 NYS2d 150, 150, 173 AD2d 555 (App Div 2d Dept), appeal den, 78 NY2d 954 (1991); State v. Tuttle, 713 P2d 703, 705 (Utah 1985) (“[A] criminal appeal dismissed after escape may be reinstated unless the State can show that it has been prejudiced by the defendant’s absence and the consequent lapse of time.”).
In Oregon, there was no formally adopted fugitive dismissal rule until 1993. Early on, however, the courts recognized their inherent authority to dismiss a criminal appeal when the defendant absconds. And, from the beginning, the rationale for the exercise of that inherent authority was not limited to the enforceability of appellate judgments. Rather, the Oregon appellate courts appear to have adopted the view that the dismissal of the appeal of an absconding defendant is appropriate because the defendant has waived the right to proceed and that only a voluntary return will suffice to undo that waiver.
On point in that regard is this court’s decision in State v. Broom, 121 Or 202, 253 P 1042 (1927). In that case, the defendant was convicted, in two separate cases, of violating the Prohibition Law and sentenced to jail and a fine. Id. at 204-05. The defendant posted an undertaking of bail and, upon release, appealed both convictions. When this court affirmed the first conviction, the defendant was ordered to return to custody. Id. at 205. As the court described the events that followed,
“[t]he defendant not appearing and surrendering himself to the custody of the law, the sheriff undertook to execute the directions of the order and take the defendant into custody, and, as a result thereof, located defendant in the Marion County jail at Salem, Oregon, where he was serving a sentence for a third crime against the Prohibition Law for which he was convicted subsequent to his convictions hereinbefore alluded to.”
Id. The defendant escaped from jail and remained a fugitive while the second appeal remained pending. The question *54 arose whether to continue with that appeal. As the court framed the question, “[c] an this fugitive from justice, from his concealed lair beyond the confines of this jurisdiction, invoke the power of this court to hear his cause upon appeal in the matter of his second conviction?” Id. at 206. The court answered the question with the following explanation:
“The authorities abundantly sustain the proposition that, in the absence of a statute regulating the procedure, it is within the discretion of the court to hear or not to hear the appeal of a prisoner who escapes pending his appeal. See Smith v. United States, 94 U. S. 97, a leading case on this subject, where the United States Supreme Court, speaking through Mr. Chief Justice Waite, wrote:
“Tt is clearly within our discretion to refuse to hear a criminal case in error, unless the convicted party, suing out the writ, is where he can be made to respond to any judgment we may render. * * If we affirm the judgment, he is not likely to appear to submit to his sentence. If we reverse it and order a new trial, he will appear or not, as he may consider most for his interest. Under such circumstances, we are not inclined to hear and decide what may prove to be only a moot case.’
“The books disclose many rulings of other courts holding to the doctrine that a fugitive from justice who has been convicted of crime shall not be permitted to prosecute an appeal to reverse the judgment of conviction, or be heard for any purpose, unless he resubmits himself to the custody of the law and the jurisdiction of the court[.]”
Id. at 206-07 (emphasis added).
Thus, the court mentioned the enforceability of judgments as one justification for the exercise of discretion to dismiss the appeal of an absconding defendant. But it also stated that an absconding defendant must “resubmit [] himself to the custody of the law and the jurisdiction of the court” to avoid dismissal, consistently with decisions such as Molinaro and Ortega-Rodriguez that hold that the rationale for a fugitive dismissal rule is not merely enforceability.
That certainly is the manner in which the Court of Appeals subsequently read Broom. For example, in State v. Sterner, 124 Or App 439, 441, 862 P2d 1321 (1993), rev den, *55 318 Or 583 (1994), the defendant was convicted of second-degree theft and was placed on probation. He filed a notice of appeal, but then absconded from the jurisdiction. The state moved to dismiss. Id. At the time, ORAP 8.05(3) had not yet been adopted, and the state invoked the appellate court’s inherent authority to apply the fugitive dismissal rule. The court agreed. Citing Broom, the court explained that “[a] criminal defendant should not be able to enjoy the benefits of the law while unlawfully avoiding its rigor,” Sterner, 124 Or App at 443, an explanation more consistent with a rationale of waiver than of mere enforceability. Indeed, the court added at that point in its opinion a discussion of the United States Supreme Court’s then-recent decision in Ortega-Rodriguez, and explained that, under that decision, “enforceability, disentitlement to court resources, deterrence and the advancement of the efficient, dignified operation of an appellate courts [are] theories underlying the dismissal of appeals filed by fugitives from justice.” Sterner, 124 Or App at 442 n 3.
Perhaps even more significant is State v. Lundahl, 130 Or App 385, 387, 882 P2d 644 (1994), a case in which the Court of Appeals dismissed a criminal appeal even though, by that time, the absconding defendant had been recaptured on a fugitive warrant. In fact, the defendant had been recaptured even before the filing of the notice of appeal. As a result, ORAP 8.05(3) — which had been adopted several months earlier — did not apply. The Court of Appeals, relying on the inherent authority of appellate courts, cited both Broom and Ortega-Rodriguez and concluded that a criminal defendant who absconds from the jurisdiction should not be able to claim the benefits of an appeal. Id. at 389-90. The decision would make no sense if the sole rationale for a fugitive dismissal rule is the enforceability of the appellate judgment; defendant, after all, was in custody at the time the notice of appeal had been filed.[2]
*56 It was in that context that the Chief Justice of the Oregon Supreme Court and the Chief Judge of the Oregon Court of Appeals,in October 1993, adopted what is now ORAP 8.05(3). Order Adopting Amendments, Chief Justice Order No. 93-091 (Oct 20,1993). They did so following a process of proposal, comment, and amendment by the Oregon Rules of Appellate Procedure Committee, consisting of members of this court, the Court of Appeals, court staff, and members of the bar. According to documents on file pertaining to the 1993 amendments, the first mention of the possibility of adopting a formal fugitive dismissal rule appeared in a March 22, 1993, memorandum from Assistant Attorneys General Ann Kelley and Timothy Sylwester to then-Solicitor General Virginia Linder, a member of the ORAP Committee, on the subject of “[p]roposed amendments to ORAP.” The memorandum proposed to amend ORAP 8.05 by adding a new subsection (3) to state the following:
“ORAP 8.05(3) If a defendant in a criminal case, a petitioner in a post-conviction proceeding, a plaintiff in a habeas corpus proceeding, a petitioner in a parole review proceeding, or a petitioner in a prison disciplinary case appeals from an adverse judgment and escapes or absconds from custody or supervision, the respondent on appeal may move for dismissal of the appeal. The court thereafter shall allow the appellant 14 days to surrender; if the appellant does not surrender within this time, the court shall dismiss the appeal.”
(Boldface omitted; second emphasis added.) The authors of the memorandum explained that “[t]he United States Supreme Court has a similar court rule, but without the 14-day window.” The March 22, 1993, memorandum was forwarded to the committee as part of a series of memoranda from the Department of Justice proposing various amendments to the rules.
Thereafter, there appears on the committee’s agenda a proposed amendment to ORAP 8.05(3). At some point, the reference to a 14-day “window” was deleted, and the current wording was substituted in its place. The materials on file do not provide further explanation or insight.
*57 The March 22, 1993, memorandum itself, however, is significant for at least two reasons. First, it introduced the word “surrender” to the rule and used the word in a way that fairly obviously refers to a voluntary act on the part of the absconding defendant. Second, it explicitly referred to the United States Supreme Court’s fugitive dismissal rule, which — as that court had held only two weeks earlier in Ortega-Rodriguez — identified waiver or disentitlement as a purpose of the rule.
Under the circumstances, it is most likely that those who adopted ORAP 8.05(3) intended the reference to “surrender” after absconding to require more than a return to custody following arrest. Rather, for at least four reasons, the term was most likely intended to refer to a voluntary return. First, that reading of the term is consistent with the ordinary meaning of the term. Second, it is also consistent with how the term “surrender” is used in other statutes, particularly statutes pertaining to criminal law, custody, and release during the pendency of an appeal. Third, the Oregon case law context within which the rule was adopted demonstrates that this state’s appellate courts understood the rationale for the pre-ORAP fugitive dismissal rule to include a defendant’s voluntary waiver of a right to proceed with the appeal; reinstating an appeal for anything other than a voluntary “surrender” is inconsistent with that purpose. Fourth, nothing in the records that exist pertaining to the adoption of ORAP 8.05(3) suggests that those who adopted the rule intended to depart from that understanding. To the contrary, what we do know of the circumstances surrounding the adoption of the rule suggest that it was intended to reflect the prevailing understanding about the authority of the courts and the rationales for the exercise of that authority.
Defendant insists that reading ORAP 8.05(3) to permit dismissal of an appeal unless the absconding defendant voluntarily resubmits to custody would impermissibly infringe on his statutory right to appeal. According to defendant, because ORS 138.020 provides that “the defendant may as a matter of right appeal from a judgment in a criminal action,” this court has limited authority to adopt rules that compromise that right and *58 may only do so if “necessary” for the prompt and orderly administration of the business of the courts.
The short answer to defendant’s contention is that, even assuming that he is correct about the limited nature of this court’s authority to adopt rules governing its own business — a matter that we do not decide — that assumption is insufficient to support the conclusion that he draws from it. Irrespective of any limits on this court’s own authority pertaining to a defendant’s statutory right to appeal, the fact remains that defendant may waive that right. As the foregoing authorities demonstrate, that is precisely what a criminal defendant does when he or she absconds from the jurisdiction of the courts once an appeal has been filed. If absconding amounts to a voluntary waiver or forfeiture of the right to proceed with an appeal under ORAP 8.05(3), it is illogical to regard a “surrender” in the face of compulsion as sufficient to undo that waiver.
Returning to the facts of this case, it is not contested that defendant absconded during the pendency of his appeal. Under ORAP 8.05(3), the Court of Appeals was entitled to grant the state’s motion to dismiss the appeal on that ground so long as the court — by the time it acted on the motion — had not been advised that defendant had “surrendered.” In this case, by the time the court had acted on the state’s motion, it had been advised only that defendant had absconded, that a bench warrant had issued for his arrest, that the police had served the warrant on defendant, and that only following his arrest did he appear in court. That does not constitute “surrender” within the meaning of the rule. Accordingly, the Court of Appeals did not err in granting the state’s motion to dismiss.
We turn, then, to the dissent. As we understand it, the dissent’s principal contention is that our interpretation of ORAP 8.05 conflicts with the plain meaning of the word “surrender,” as reflected in dictionary definitions. As we have noted, however, not all of the dictionary definitions are so limited. Moreover, examples from the Oregon Revised Statutes confirm that our interpretation of the word “surrender” is consistent with the ordinary meaning of the term. The dissent’s response is to assert that, in such cases, *59 the legislature has simply chosen to use the term in other than its ordinary sense. Of course, that amounts to question-begging, for it assumes the very matter in dispute; namely, the ordinary meaning of the word.
The dissent also takes issue with our reference to the case law context in which ORAP 8.05 was adopted, in particular, the Court of Appeals decisions in Sterner and Lundahl. The dissent does not dispute that those decisions support our reading of the rule. Rather, it contends that they are irrelevant, because “Court of Appeals decisions are not precedents that bind this court.” 352 Or at 71 (Durham, J., dissenting).
No one suggests that Sterner and Lundahl are “binding” on this court. We do regard them as relevant context for the adoption of the rule, however. That rule, after all, was adopted not just by this court, but also by the Chief Judge of the Court of Appeals, following consideration by a committee that included members of the Court of Appeals. We do not understand why it is unreasonable to assume that those who adopted the rule took into account the existing state of the law — including Court of Appeals decisions— when they did so.
Finally, the dissent asserts that we have stood “the rule on its head” by relieving the state of the burden of proving the negative, that is, that defendant did not, in fact, surrender himself back into custody. 352 Or at 74 (Durham, J, dissenting). We have done no such thing.
It is not entirely clear whether the rule imposes the burden of proof that the dissent asserts. The rule simply states, in the passive voice, that the court may dismiss an appeal because a defendant has absconded, if it “has not been advised otherwise.” But, we need not decide in this case whether that phrasing imposes a burden of proof on one party or the other. Even assuming for the sake of the argument that the state bears such a burden, we conclude that it met that burden in this case.
The order of the Court of Appeals is affirmed.

 The notion that disentitlement is an important rationale for the fugitive dismissal rule did not originate with Molinaro. It dates back at least to Allen v. Georgia, 166 US 138, 141-42, 17 S Ct 525, 41 L Ed 949 (1897), in which the Court upheld a state court’s dismissal of a fugitive defendant’s appeal even after the defendant’s recapture. Allen, in turn, cited even earlier decisions, including Commonwealth v. Andrews, 97 Mass 543, 544 (1867), in which the Supreme Judicial Court of Massachusetts held that, “[s]o far as the defendant had any right to be heard under the constitution, he must be deemed to have waived it by escaping from custody and failing to appear and prosecute his exceptions in person!.]”

 It is true that the Court of Appeals opinion in Lundahl was not published until several months after the adoption of ORAP 8.05(3). The opinion, however, remains instructive about the state of the law before the adoption of that rule. See Smothers v. Gresham Transfer, Inc., 332 Or 83, 129, 23 P3d 333 (2001) (“Oregon cases decided within a relatively short period after 1857 [] are instructive” as to the state of the law before 1857).