Filed: June 7, 2012

IN THE SUPREME COURT OF THE STATE OF OREGON

STATE OF OREGON,

Respondent on Review,

v.

JESSE VANCE MOSS,

Petitioner on Review.

(CC 08CR0445; CA A141464; SC S058860)

En Banc

On review of an order of the Court of Appeals.

Argued and submitted March 8, 2011, at the University of Oregon School of Law, Eugene, Oregon. Reassigned March 27, 2012.

Kristin Carveth, Deputy Public Defender, Salem, argued the cause and filed the brief for petitioner on review. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Cecil A. Reniche-Smith, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. With her on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

LANDAU, J.

The order of the Court of Appeals is affirmed.

Durham, J., dissented and filed an opinion, in which De Muniz and Walters, JJ., joined.

LANDAU, J.

Oregon's fugitive dismissal rule, ORAP 8.05(3), provides that, when a criminal defendant has absconded during the pendency of an appeal, an appellate court may dismiss the appeal, as long as the defendant "has not surrendered" at the time of the dismissal. In this case, defendant filed a notice of appeal and then absconded. The state moved to dismiss. In the meantime, defendant was arrested and returned to custody. On the basis of his return to custody, defendant opposed the motion to dismiss, arguing that he had "surrendered." The state responded that the mere fact that an absconding defendant has been apprehended by police is not sufficient to establish that he has "surrendered" within the meaning of the rule. The Court of Appeals agreed with the state and dismissed the appeal. We allowed defendant's petition for review and, for the reasons that follow, affirm the order of dismissal.

The relevant facts are uncontested. In February 2009, after his convictions for interfering with a peace officer, disorderly conduct, and criminal trespass, defendant was sentenced to 24 months' probation, the conditions of which included payment of fines and fees in accordance with a payment schedule and completion of community service. Defendant timely appealed, challenging the conviction for disorderly conduct.

Meanwhile, defendant failed to complete community service and failed to pay the fines and fees as agreed. On July 15, 2010, the trial court issued an order to show cause why defendant's probation should not be revoked, directing defendant to appear on August 17, 2010. Defendant did not appear as directed. The trial court found that defendant "has absconded from probation" and issued a bench warrant for defendant's

1

arrest. Three days later, on August 20, 2010, the state filed a motion to dismiss defendant's appeal pursuant to ORAP 8.05(3) on the ground that defendant had absconded.

On September 2, 2010, defendant filed a response in opposition to the state's motion. He did not challenge the state's assertion that he had absconded. Rather, he argued that dismissal was no longer permitted because he had "surrendered" within the meaning of the rule in light of his return to custody. In support of that contention, defendant submitted a copy of an OJIN printout, indicating that the police had served him with an arrest warrant on August 22, 2010, and that he had appeared before the trial court the following day.

The Court of Appeals dismissed the appeal. Defendant petitioned for review, arguing that the Court of Appeals erred. His return to custody, he argues, constitutes "surrender" within the meaning of ORAP 8.05(3) and thus precludes dismissal of the appeal. The state responds that the rule requires more than merely having been arrested to constitute the sort of "surrender" that precludes the dismissal of an absconding defendant's appeal. Thus framed, the issue is one of interpretation; specifically, the interpretation of the term "surrender" as it is used in ORAP 8.05(3). In *State v. Robbins*, 345 Or 28, 188 P3d 262 (2008), this court resolved a dispute concerning the interpretation of a different portion of ORAP 8.05(3) by applying the rules of interpretation that ordinarily apply to statutes and administrative rules. We follow that example in this case.

Accordingly, we begin with the text of the rule, which provides, in part:

2

"(3) If a defendant in a criminal case, * * * on appeal of an adverse decision, escapes or absconds from custody or supervision, the respondent on appeal may move for dismissal of the appeal. If the appellant has not surrendered at the time the motion is decided by the court, the court may dismiss the appeal * * *. If the court has not been advised otherwise, the court may assume that the appellant has not surrendered when the court considers and decides the motion."

ORAP 8.05(3). When a disputed term in a statute or rule is undefined by that rule, we assume that it partakes of its ordinary meaning. *See, e.g.*, *State v. Murray*, 340 Or 599, 604, 136 P3d 10 (2006) ("Absent a special definition, we ordinarily would resort to dictionary definitions, assuming that the legislature meant to use a word of common usage in its ordinary sense.").

The term "surrender" has a variety of different "ordinary" meanings:

"*vt* **1 :** to make a surrender in law of : as **a :** to give up (an estate) to the holder in remainder or reversion **b :** to relinquish (as rights or claims under a patent) to the grantor **c :** to deliver (the principal) into lawful custody **2 a :** to yield to the power, control, authority, or possession of another **:** give or deliver up possession of upon compulsion or demand **:** cease trying to retain or control and agree to yield * * * **b :** to give up completely or agree to forgo esp. in favor of another **:** abandon, resign, or relinquish possession of usu. for the sake of another **:** assent to loss of possession or exercise of or power or control over * * * **3 a :** to give (oneself) up into the power of another esp. as a prisoner **b :** to give (oneself) over to something * * * *vi* **:** to give oneself up into the power of another **:** YIELD * * *."

*Webster's Third New Int'l Dictionary* 2301-02 (unabridged ed 2002). Some of the definitions seem consistent with defendant's proposed reading of the rule. For example, the definition, "to yield to the power, control, authority, or possession of another," seems consistent with defendant's contentions in this case. Other definitions, however, are consistent with the state's proposed reading of the rule. The first definition states that the term means "to make a surrender in law of : as * * * to deliver (the principal) into lawful

3

custody."  Similarly, an alternate definition is "to give up completely or agree to forgo."  In both examples, the term "surrender" is used to refer to a voluntary act of delivery or relinquishment, not in response to force or compulsion.

Oregon statutes reflect the same variety of usages that the dictionary definitions spell out.  Some statutes use the term in a sense that is arguably close to the one that defendant proposes.  ORS 398.348(2), for example, authorizes a court martial to punish a person "who before or in the presence of the enemy" either "surrenders or delivers up any command."  Others use the term in the sense of an intentional voluntary act, one that is not taken in response to force or compulsion.  ORS 73.0604(1)(a), for example, provides that a person entitled to enforce an instrument may discharge the obligation of another to pay that instrument "[b]y an intentional voluntary act, such as surrender of the instrument."

Similarly, statutes pertaining to criminal law, custody, and appeal use the term "surrender" to refer to voluntary -- and not compelled -- relinquishment or delivery.  Statutes concerning extradition of criminal defendants, for example, provide that "the Governor, at the discretion of the Governor, either may surrender the person on the demand of the executive authority of another state or may hold the person until the person has been tried and discharged, or convicted and punished in this state."  ORS 133.817.  Clearly, the Governor's act of "surrendering" the defendant is a voluntary -- indeed, expressly discretionary -- act.  ORS 135.280, which governs the failure of a defendant to comply with the terms of a release agreement, provides that the court may issue a notice of forfeiture of any security that the defendant has posted and, if "the

4

defendant does not appear or satisfy the court having jurisdiction that appearance and surrender by the defendant was, or still is, impossible and without fault of the defendant, the court shall enter judgment for the state[.]"

What the foregoing demonstrates is that the rule is at least ambiguous. The interpretations proffered by both defendant and the state are plausible, in the sense that they are consistent with ordinary meaning and with usage in various state statutes. The question for us is which of those multiple possible senses of the word "surrender" is the one likely intended by those who adopted the rule. *See State v. Cloutier*, 351 Or 68, 96, 261 P3d 1234 (2011) ("Dictionaries, after all, do not tell us what words mean, only what words *can* mean, depending on their context and the particular manner in which they are used." (Emphasis in original.)). We answer that question by considering the context within which the rule was adopted. *Robbins*, 345 Or at 34-37 (considering context of adoption of ORAP 8.05(3)).

What is known as "the fugitive dismissal rule" -- or in some jurisdictions, "the fugitive disentitlement doctrine" -- is an equitable doctrine that dates back to the late-nineteenth century. *See generally* Mitchell Waldman, Annotation, *Application of "Fugitive Disentitlement Doctrine" in Federal Civil Actions*, 176 ALR Fed 333 (2002); Anthony Michael Altman, *The Fugitive Dismissal Rule:* Ortega-Rodriguez *Takes the Bite Out of Flight*, 22 Pepp L Rev 1047, 1049-53 (1995) (discussing historical development of "the fugitive dismissal rule"); Jason W. Joseph, *The Fugitive Dismissal Rule Applied to Pre-Appeal Fugitivity*, 84 J Crim L & Criminology 1086, 1086-91 (1994) (same). Under that long-established legal principle, appellate courts possess inherent authority to

5

dismiss a defendant's appeal if that defendant has absconded from the court's jurisdiction.

Courts have identified several rationales for the rule. The initial justification for the rule was the unenforceability of judgments against a fleeing defendant. *See, e.g.*, *Smith v. United States*, 94 US 97, 97, 24 L Ed 32 (1876) ("It is clearly within our discretion to refuse to hear a criminal case in error, unless the convicted party * * * is where he can be made to respond to any judgment we may render.").

But the courts invoking the rule were quick to add a second consideration, namely, the fact that absconding from an appellate court's jurisdiction amounted to a waiver -- or a "disentitlement" -- of the right to pursue the appeal. As the United States Supreme Court explained in *Molinaro v. New Jersey*, 396 US 365, 366, 90 S Ct 498, 24 L Ed 2d 586 (1970),

> "No persuasive reason exists why this Court should proceed to adjudicate the merits of a criminal case after the convicted defendant who has sought review escapes from the restraints placed upon him pursuant to the conviction. While such an escape does not strip the case of its character as an adjudicable case or controversy, *we believe it disentitles the defendant to call upon the resources of the Court for determination of his claims*."

(Emphasis added.)[1] More recently, in *Ortega-Rodriguez v. United States*, 507 US 234,

---

[1]    The notion that disentitlement is an important rationale for the fugitive dismissal rule did not originate with *Molinaro*. It dates back at least to *Allen v. Georgia*, 166 US 138, 141-42, 17 S Ct 525, 41 L Ed 949 (1897), in which the Court upheld a state court's dismissal of a fugitive defendant's appeal even after the defendant's recapture. *Allen*, in turn, cited even earlier decisions, including *Commonwealth v. Andrews*, 97 Mass 543, 544 (1867), in which the Supreme Judicial Court of Massachusetts held that, "[s]o far as the defendant had any right to be heard under the constitution, he must be deemed

6

240, 113 S Ct 1199, 122 L Ed 2d 581 (1993), the Supreme Court explained that "[e]nforceability is not * * * the only explanation we have offered for the fugitive dismissal rule."  Citing *Molinaro*, the court explained that, "the rule allowing dismissal of fugitives' appeals has rested in part on enforceability concerns, and in part on a 'disentitlement' theory that construes a defendant's flight during the pendency of his appeal as tantamount to waiver or abandonment."  *Ortega-Rodriguez*, 507 US at 240.

Most courts applying a fugitive dismissal rule have adopted the rationale referred to in *Molinaro* and *Ortega-Rodriguez* that, aside from the fact that allowing an absconding defendant to proceed with an appeal creates enforceability problems, such a defendant who flees from a court's jurisdiction waives or forfeits the right to proceed with the appeal.  *See generally* James L. Buchwalter, Annotation, *Effect of Escape by, or Fugitive Status of, State Criminal Defendant on Availability of Appeal or Other Post-Verdict or Post-Conviction Relief -- State Cases*, 105 ALR 5th 529, 573-98, § 11 (2003 & Supp 2009).  In such jurisdictions, even the eventual recapture of an absconding criminal defendant does not lead to the reinstatement of the appeal.  As one court representative of that view explained, "[i]n escaping, appellant has demonstrated his contempt for the justice system of which the appellate court is one part.  Merely because -- no thanks to him -- he is recaptured, it is not evident that he regains the right to review that he earlier forfeited."  *U.S. v. Puzzanghera*, 820 F2d 25, 26 (1st Cir), *cert den*, 484 US

to have waived it by escaping from custody and failing to appear and prosecute his exceptions in person[.]"

900 (1987).

Moreover, as has been noted by many courts, refusing to reinstate an appeal following recapture discourages escapes, encourages voluntary surrender, and promotes the efficient operation of the courts. *See, e.g.*, *Degen v. United States*, 517 US 820, 824, 116 S Ct 1777, 135 L Ed 2d 102 (1996) ("Disentitlement 'discourages the felony of escape and encourages voluntary surrenders' and 'promotes the efficient dignified operation' of the courts." (Quoting *Estelle v. Dorrough*, 420 US 534, 537, 95 S Ct 1173, 43 L Ed 2d 377, *reh'g den*, 421 US 921 (1975).)); *State v. Moran-Soto*, 150 Idaho 175, 179, 244 P3d 1261 (Idaho App 2010) ("[D]ismissal discourages escapes and encourages fugitives to surrender."); *Reid v. Commonwealth*, 57 Va App 42, 53-54, 698 SE2d 269 (2010) (same).

Some courts take a more limited view of the fugitive dismissal rule. They reject the waiver or forfeiture rationale and hold instead that the enforceability of appellate judgments is the sole purpose of the rule. Those courts regard recapture as grounds for reinstating a previously absconding criminal defendant's appeal. *See, e.g.*, *People v. Estrada*, 570 NYS2d 150, 150, 173 AD2d 555 (App Div 2d Dept), *appeal den*, 78 NY2d 954 (1991); *State v. Tuttle*, 713 P2d 703, 705 (Utah 1985) ("[A] criminal appeal dismissed after escape may be reinstated unless the State can show that it has been prejudiced by the defendant's absence and the consequent lapse of time.").

In Oregon, there was no formally adopted fugitive dismissal rule until 1993. Early on, however, the courts recognized their inherent authority to dismiss a criminal appeal when the defendant absconds. And, from the beginning, the rationale for

8

the exercise of that inherent authority was not limited to the enforceability of appellate judgments. Rather, the Oregon appellate courts appear to have adopted the view that the dismissal of the appeal of an absconding defendant is appropriate because the defendant has waived the right to proceed and that only a voluntary return will suffice to undo that waiver.

On point in that regard is this court's decision in *State v. Broom*, 121 Or 202, 253 P 1042 (1927). In that case, the defendant was convicted, in two separate cases, of violating the Prohibition Law and sentenced to jail and a fine. *Id.* at 204-05. The defendant posted an undertaking of bail and, upon release, appealed both convictions. When this court affirmed the first conviction, the defendant was ordered to return to custody. *Id.* at 205. As the court described the events that followed,

> "[t]he defendant not appearing and surrendering himself to the custody of the law, the sheriff undertook to execute the directions of the order and take the defendant into custody, and, as a result thereof, located defendant in the Marion County jail at Salem, Oregon, where he was serving a sentence for a third crime against the Prohibition Law for which he was convicted subsequent to his convictions hereinbefore alluded to."

*Id.* The defendant escaped from jail and remained a fugitive while the second appeal remained pending. The question arose whether to continue with that appeal. As the court framed the question, "[c]an this fugitive from justice, from his concealed lair beyond the confines of this jurisdiction, invoke the power of this court to hear his cause upon appeal in the matter of his second conviction?" *Id.* at 206. The court answered the question with the following explanation:

> "The authorities abundantly sustain the proposition that, in the absence of a statute regulating the procedure, it is within the discretion of

9

the court to hear or not to hear the appeal of a prisoner who escapes pending his appeal. See *Smith v. United States*, 94 U. S. 97, a leading case on this subject, where the United States Supreme Court, speaking through Mr. Chief Justice Waite, wrote:

> "'It is clearly within our discretion to refuse to hear a criminal case in error, unless the convicted party, suing out the writ, is where he can be made to respond to any judgment we may render. * * If we affirm the judgment, he is not likely to appear to submit to his sentence. If we reverse it and order a new trial, he will appear or not, as he may consider most for his interest. Under such circumstances, we are not inclined to hear and decide what may prove to be only a moot case.'
>
> "The books disclose many rulings of other courts holding to the doctrine that a fugitive from justice who has been convicted of crime shall not be permitted to prosecute an appeal to reverse the judgment of conviction, or be heard for any purpose, *unless he resubmits himself to the custody of the law and the jurisdiction of the court*[.]"

*Id.* at 206-07 (emphasis added).

Thus, the court mentioned the enforceability of judgments as one justification for the exercise of discretion to dismiss the appeal of an absconding defendant. But it also stated that an absconding defendant must "resubmit[] himself to the custody of the law and the jurisdiction of the court" to avoid dismissal, consistently with decisions such as *Molinaro* and *Ortega-Rodriguez* that hold that the rationale for a fugitive dismissal rule is not merely enforceability.

That certainly is the manner in which the Court of Appeals subsequently read *Broom*. For example, in *State v. Sterner*, 124 Or App 439, 441, 862 P2d 1321 (1993), *rev den*, 318 Or 583 (1994), the defendant was convicted of second-degree theft and was placed on probation. He filed a notice of appeal, but then absconded from the jurisdiction. The state moved to dismiss. *Id.* At the time, ORAP 8.05(3) had not yet

10

been adopted, and the state invoked the appellate court's inherent authority to apply the fugitive dismissal rule. The court agreed. Citing *Broom*, the court explained that "[a] criminal defendant should not be able to enjoy the benefits of the law while unlawfully avoiding its rigor," *Sterner*, 124 Or App at 443, an explanation more consistent with a rationale of waiver than of mere enforceability. Indeed, the court added at that point in its opinion a discussion of the United States Supreme Court's then-recent decision in *Ortega-Rodriguez*, and explained that, under that decision, "enforceability, disentitlement to court resources, deterrence and the advancement of the efficient, dignified operation of an appellate courts [are] theories underlying the dismissal of appeals filed by fugitives from justice." *Sterner*, 124 Or App at 442 n 3.

Perhaps even more significant is *State v. Lundahl*, 130 Or App 385, 387, 882 P2d 644 (1994), a case in which the Court of Appeals dismissed a criminal appeal even though, by that time, the absconding defendant had been recaptured on a fugitive warrant. In fact, the defendant had been recaptured even before the filing of the notice of appeal. As a result, ORAP 8.05(3) -- which had been adopted several months earlier -- did not apply. The Court of Appeals, relying on the inherent authority of appellate courts, cited both *Broom* and *Ortega-Rodriguez* and concluded that a criminal defendant who absconds from the jurisdiction should not be able to claim the benefits of an appeal. *Id.* at 389-90. The decision would make no sense if the sole rationale for a fugitive dismissal rule is the enforceability of the appellate judgment; defendant, after all, was in

11

custody at the time the notice of appeal had been filed.[2]

It was in that context that the Chief Justice of the Oregon Supreme Court and the Chief Judge of the Oregon Court of Appeals, in October 1993, adopted what is now ORAP 8.05(3). Order Adopting Amendments, Chief Justice Order No. 93-091 (Oct 20, 1993). They did so following a process of proposal, comment, and amendment by the Oregon Rules of Appellate Procedure Committee, consisting of members of this court, the Court of Appeals, court staff, and members of the bar. According to documents on file pertaining to the 1993 amendments, the first mention of the possibility of adopting a formal fugitive dismissal rule appeared in a March 22, 1993, memorandum from Assistant Attorneys General Ann Kelley and Timothy Sylwester to then-Solicitor General Virginia Linder, a member of the ORAP Committee, on the subject of "[p]roposed amendments to ORAP." The memorandum proposed to amend ORAP 8.05 by adding a new subsection (3) to state the following:

> "ORAP 8.05(3)  If a defendant in a criminal case, a petitioner in a post-conviction proceeding, a plaintiff in a *habeas corpus* proceeding, a petitioner in a parole review proceeding, or a petitioner in a prison disciplinary case appeals from an adverse judgment and escapes or absconds from custody or supervision, the respondent on appeal may move for dismissal of the appeal. *The court thereafter shall allow the appellant 14 days to surrender; if the appellant does not surrender within this time,*

---

[2] It is true that the Court of Appeals opinion in *Lundahl* was not published until several months after the adoption of ORAP 8.05(3). The opinion, however, remains instructive about the state of the law before the adoption of that rule. *See Smothers v. Gresham Transfer, Inc.*, 332 Or 83, 129, 23 P3d 333 (2001) ("Oregon cases decided within a relatively short period after 1857[] are instructive" as to the state of the law before 1857).

12

*the court shall dismiss the appeal.*"

(Boldface omitted; second emphasis added.) The authors of the memorandum explained that "[t]he United States Supreme Court has a similar court rule, but without the 14-day window." The March 22, 1993, memorandum was forwarded to the committee as part of a series of memoranda from the Department of Justice proposing various amendments to the rules.

Thereafter, there appears on the committee's agenda a proposed amendment to ORAP 8.05(3). At some point, the reference to a 14-day "window" was deleted, and the current wording was substituted in its place. The materials on file do not provide further explanation or insight.

The March 22, 1993, memorandum itself, however, is significant for at least two reasons. First, it introduced the word "surrender" to the rule and used the word in a way that fairly obviously refers to a voluntary act on the part of the absconding defendant. Second, it explicitly referred to the United States Supreme Court's fugitive dismissal rule, which -- as that court had held only two weeks earlier in *Ortega-Rodriguez* -- identified waiver or disentitlement as a purpose of the rule.

Under the circumstances, it is most likely that those who adopted ORAP 8.05(3) intended the reference to "surrender" after absconding to require more than a return to custody following arrest. Rather, for at least four reasons, the term was most likely intended to refer to a voluntary return. First, that reading of the term is consistent with the ordinary meaning of the term. Second, it is also consistent with how the term "surrender" is used in other statutes, particularly statutes pertaining to criminal law,

13

custody, and release during the pendency of an appeal. Third, the Oregon case law context within which the rule was adopted demonstrates that this state's appellate courts understood the rationale for the pre-ORAP fugitive dismissal rule to include a defendant's voluntary waiver of a right to proceed with the appeal; reinstating an appeal for anything other than a voluntary "surrender" is inconsistent with that purpose. Fourth, nothing in the records that exist pertaining to the adoption of ORAP 8.05(3) suggests that those who adopted the rule intended to depart from that understanding. To the contrary, what we do know of the circumstances surrounding the adoption of the rule suggest that it was intended to reflect the prevailing understanding about the authority of the courts and the rationales for the exercise of that authority.

Defendant insists that reading ORAP 8.05(3) to permit dismissal of an appeal unless the absconding defendant voluntarily resubmits to custody would impermissibly infringe on his statutory right to appeal. According to defendant, because ORS 138.020 provides that "the defendant may as a matter of right appeal from a judgment in a criminal action," this court has limited authority to adopt rules that compromise that right and may only do so if "necessary" for the prompt and orderly administration of the business of the courts.

The short answer to defendant's contention is that, even assuming that he is correct about the limited nature of this court's authority to adopt rules governing its own business -- a matter that we do not decide -- that assumption is insufficient to support the conclusion that he draws from it. Irrespective of any limits on this court's own authority pertaining to a defendant's statutory right to appeal, the fact remains that defendant may

14

waive that right. As the foregoing authorities demonstrate, that is precisely what a criminal defendant does when he or she absconds from the jurisdiction of the courts once an appeal has been filed. If absconding amounts to a voluntary waiver or forfeiture of the right to proceed with an appeal under ORAP 8.05(3), it is illogical to regard a "surrender" in the face of compulsion as sufficient to undo that waiver.

Returning to the facts of this case, it is not contested that defendant absconded during the pendency of his appeal. Under ORAP 8.05(3), the Court of Appeals was entitled to grant the state's motion to dismiss the appeal on that ground so long as the court -- by the time it acted on the motion -- had not been advised that defendant had "surrendered." In this case, by the time the court had acted on the state's motion, it had been advised only that defendant had absconded, that a bench warrant had issued for his arrest, that the police had served the warrant on defendant, and that only following his arrest did he appear in court. That does not constitute "surrender" within the meaning of the rule. Accordingly, the Court of Appeals did not err in granting the state's motion to dismiss.

We turn, then, to the dissent. As we understand it, the dissent's principal contention is that our interpretation of ORAP 8.05 conflicts with the plain meaning of the word "surrender," as reflected in dictionary definitions. As we have noted, however, not all of the dictionary definitions are so limited. Moreover, examples from the Oregon Revised Statutes confirm that our interpretation of the word "surrender" is consistent with the ordinary meaning of the term. The dissent's response is to assert that, in such cases, the legislature has simply chosen to use the term in other than its ordinary sense. Of

15

course, that amounts to question-begging, for it assumes the very matter in dispute; namely, the ordinary meaning of the word.

The dissent also takes issue with our reference to the case law context in which ORAP 8.05 was adopted, in particular, the Court of Appeals decisions in *Sterner* and *Lundahl*. The dissent does not dispute that those decisions support our reading of the rule. Rather, it contends that they are irrelevant, because "Court of Appeals decisions are not precedents that bind this court." ___ Or at ___ (slip op at 15) (Durham, J., dissenting).

No one suggests that *Sterner* and *Lundahl* are "binding" on this court. We do regard them as relevant context for the adoption of the rule, however. That rule, after all, was adopted not just by this court, but also by the Chief Judge of the Court of Appeals, following consideration by a committee that included members of the Court of Appeals. We do not understand why it is unreasonable to assume that those who adopted the rule took into account the existing state of the law -- including Court of Appeals decisions -- when they did so.

Finally, the dissent asserts that we have stood "the rule on its head" by relieving the state of the burden of proving the negative, that is, that defendant did not, in fact, surrender himself back into custody. ___ Or at ___ (slip op at 18) (Durham, J., dissenting). We have done no such thing.

It is not entirely clear whether the rule imposes the burden of proof that the dissent asserts. The rule simply states, in the passive voice, that the court may dismiss an appeal because a defendant has absconded, if it "has not been advised otherwise." But,

16

we need not decide in this case whether that phrasing imposes a burden of proof on one party or the other. Even assuming for the sake of the argument that the state bears such a burden, we conclude that it met that burden in this case.

The order of the Court of Appeals is affirmed.

DURHAM, J., dissenting.

Following his conviction for second-degree disorderly conduct and other crimes, defendant appealed to the Court of Appeals, contending that the trial court should have granted his motion for judgment of acquittal of the disorderly conduct charge. While the appeal was pending, the state moved to dismiss the appeal under ORAP 8.05(3), arguing that defendant had escaped or absconded from supervision and was a fugitive from justice.

ORAP 8.05(3) provides, in part:

> "(3) If a defendant in a criminal case, * * * on appeal of an adverse decision, escapes or absconds from custody or supervision, the respondent on appeal may move for dismissal of the appeal. If the appellant has not surrendered at the time the motion is decided by the court, the court may dismiss the appeal or judicial review. If the court has not been advised otherwise, the court may assume that the appellant has not surrendered when the court considers and decides the motion."

What governs the outcome in this case is the intended meaning of the phrase "has not surrendered" in that rule. The majority presents a lengthy history of the treatment accorded to appeals by escaped prisoners in the state and federal courts of other jurisdictions and, in *dictum*, comments by this court in one case about that subject. The majority attributes great interpretative weight to its historical recital. I do not, for reasons that I shall explain. The majority then relies on its view of prerule case law and decisions of the Court of Appeals to narrow the meaning of "surrendered" in ORAP 8.05(3) so that it excludes a voluntary surrender *if* the police possess or serve an arrest warrant on the defendant. Additionally, the majority announces that the rule now imposes a waiver of defendant's statutory right to appeal, despite any support for that conclusion in the rule's

1

text, and shifts *to defendant* the burden to demonstrate that he *has surrendered*, despite the rule's contrary phrasing ("has not surrendered") and overall structure. That simply erases the state's obligation to prove a fact necessary to sustain the state's motion to dismiss. In committing those interpretive errors, the majority places the operation of ORAP 8.05(3) in a position of maximum conflict, rather than cooperation, with every party's statutory right to appeal a judgment in a criminal action. *See* ORS 138.020 ("Either the state or the defendant may as a matter of right appeal from a judgment in a criminal action in the cases prescribed in ORS 138.010 to 138.310, and not otherwise."). Because the majority's gloss on ORAP 8.05(3) is both wrong and unnecessary, I respectfully dissent.

I briefly review the pertinent facts. At the time of defendant's conviction, the court placed defendant on probation and required him to pay certain fines and fees, among other conditions. Defendant appealed from the court's judgment, challenging the disorderly conduct conviction. On July 15, 2010, the trial court, acting on information supplied by the appointed probation officer, issued an order to show cause to defendant, alleging that he had failed to pay the fines and fees, and ordering him to appear on August 17, 2010, to show cause why the court should not revoke probation. The state mailed the order to defendant's last known address.

On August 10, 2010, the probation officer filed a "Notice of Community Service Non-Compliance," which recited that defendant "[had] not been seen or heard from since 6/21/10" and had "[f]ailed to work the ordered monthly minimum of hours." The notice also recited that the probation officer had called defendant's telephone about a

community service contact and a female had answered and informed defendant of the call. The female relayed defendant's request to call back in 10 minutes; defendant did not return the probation officer's call. Notably, the record contains no indication that anyone served the probation officer's notice on defendant.

On August 17, 2010, the trial court entered an order finding that defendant had failed to appear to show cause and that "defendant has absconded from probation." Neither the order nor any other part of the record explains whether the court based that conclusion on defendant's failure to pay fines and fees, as alleged in the order to show cause, or on some other behavior not set out in the order to show cause, such as defendant's failure to appear for the show cause hearing. The court issued a bench warrant for defendant's arrest.

On August 20, 2010, the state filed a motion in the Court of Appeals to dismiss defendant's appeal of the disorderly conduct conviction. The state alleged that defendant had absconded from supervision and was a fugitive from justice.

The police served the trial court's bench warrant on defendant on August 22, 2010. The record contains no information from the police about whether defendant yielded to the authority of the police when they served the warrant.

Defendant appeared before the trial court on August 23 and 24, 2010. He signed a conditional release agreement on August 25, 2010. Defendant contends, and the record appears to confirm, that he has been subject to the court's jurisdiction ever since and was no longer a fugitive from justice in any sense.

On September 2, 2010, defendant answered the state's motion to dismiss,

3

asserting that he had surrendered to the police, that the Court of Appeals had no authority to dismiss his appeal because he was "no longer" a fugitive due to his surrender and court appearance, and that the state was fully aware of his whereabouts. On September 14, 2010, the Court of Appeals entered an order dismissing defendant's appeal. The order dismissing defendant's appeal stated:

> "[The state] has moved to dismiss this appeal on the ground that [defendant] has absconded from the jurisdiction of the court as shown by his failure to maintain contact with his probation officer and to complete community service. *See generally* ORAP 8.05(3); *State v. Fettel*, 210 Or App 404, 150 P3d 1076 (2007). The motion is granted."

The order did not address whether defendant had surrendered before the court decided the state's motion.

Before turning to the interpretive problem presented here, I draw attention to the fact that ORAP 8.05(3) may not apply to defendant's conduct here. In *State v. Robbins*, 345 Or 28, 33, 188 P3d 262 (2008), this court pointed out that ORAP 8.05(3) authorizes the state to move for dismissal only if defendant "escapes or absconds from custody or supervision." *Robbins* explained that, to establish that a defendant has escaped or absconded, the state must show that the defendant intended to evade justice by flight, by hiding, by avoiding probation supervision, or by some combination of those actions. *Id.* at 36. According to *Robbins*, it is not sufficient that the defendant failed to attend one meeting with a probation officer or could not be located for a brief time. *Id.*

In this case, the state relied in its motion to dismiss on the trial court's conclusion in the show cause proceeding that defendant had absconded from probation. But the factual claim that initiated that proceeding in the trial court concerned only

4

defendant's alleged failure to pay fines or fees, as ordered in the judgment of his conviction. That conduct, if proven, does not constitute escaping or absconding from custody or supervision. Even assuming *arguendo* that the state could expand the scope of that hearing without notice to defendant, the state does not explain how the other problem that it raised -- an unreturned telephone call seeking a community service supervisor's contact information -- amounted to escaping or absconding from supervision. Finally, defendant's nonappearance for the show cause proceeding was a serious matter, but so was the missed meeting with a probation officer in *Robbins*. The state does not explain why the court should reach a different result here than that reached in *Robbins* with respect to whether missing an important appointment constitutes escaping or absconding from supervision.

Defendant, however, does not assert in this court that his behavior does not amount to escaping or absconding from supervision. He focuses, instead, on his contention that the Court of Appeals lacked authority to dismiss his appeal because, when the court decided the state's motion, the record was insufficient to show that he "had not surrendered" under ORAP 8.05(3).

ORAP 8.05(3) was adopted in 1993 by an order signed by the Chief Justice of this court and the Chief Judge of the Court of Appeals. Our objective here is to discover and give effect to the intent of those judicial officials in enacting the rule in 1993. The majority correctly notes that, in construing ORAP 8.05(3), we must apply the same principles of interpretation that ordinarily apply to the interpretation of statutes and administrative rules.

ORAP 8.05(3) consists of three sentences. By its plain terms, the first sentence of ORAP 8.05(3) permits the state to *move* for dismissal of an appeal if a criminal defendant "escapes or absconds from custody or supervision." The second sentence of the rule provides that, "[i]f the [defendant] has not surrendered at the time the motion is decided by the court, the court may dismiss the appeal." The prefatory clause of the second sentence makes it plain that an appellate court obtains legal authority to grant the state's motion for dismissal only in the event that a negative fact exists, *i.e.*, that "the [defendant] has not surrendered" at the time that the court decides the state's motion. *See Blacknall v. Board of Parole*, 348 Or 131, 140, 229 P3d 595 (2010) (use of the word "if" in context of prefatory phrase sets out a condition that must be met and a result that may occur only "in the event that" or "so long as" that condition is satisfied). The third sentence in ORAP 8.05(3) adds an additional layer to the analysis. That sentence, which provides that, "[i]f the court has not been advised otherwise, the court may assume that the [defendant] has not surrendered when the court considers and decides the motion," permits the court to assume the truth of the negative fact that a defendant "has not surrendered" unless the court is "advised otherwise," *i.e.*, if either party informs the court that the defendant *has* surrendered.

The meaning of the term "surrender" is key to an understanding of the second and third sentences of ORAP 8.05(3). *Webster's* supplies the following definition of the verb "surrender":

"**1 :** to make a surrender in law of : as * * * **c :** to deliver (the principal) into lawful custody. **2 a :** to yield to the power, control, authority, or possession of another **:** give or deliver up possession of upon compulsion or demand **:**

6

cease trying to retain or control and agree to yield [examples: surrendered the fort; forced to surrender the ship] * * * **b :** to give up completely or agree to forgo esp. in favor of another **:** abandon, resign, or relinquish possession of [usu] for the sake of another **:** assent to loss of possession or exercise of or power or control over [example: surrendered his chair to the lady] * * * **3 a :** to give (oneself) up into the power of another esp. as a prisoner **b :** * * * **:** to give oneself up into the power of another **:** YIELD [examples: ordered the troops to surrender; the enemy must soon surrender]."

*Webster's Third New Int'l Dictionary* 2301-02 (unabridged ed 2002).

The phrase "has not surrendered" in ORAP 8.05(3) refers to an action that has not occurred. Applying the elements set out in the definition and considering the context of this case, that action consists of yielding oneself to the power, control, authority, or possession of the state, such as submitting to the custody of an arresting officer.[1] The pertinent phrase in the rule, "has not surrendered," thus describes a condition in which the required action, *i.e.*, the yielding of oneself to state authority, has not occurred.

The majority correctly begins with the ordinary dictionary definitions of "surrender." The majority posits that some definitions support defendant while other definitions support the state, and concludes from that review that the arguments of each side are plausible and that the term "surrender" is ambiguous.

In my view, the majority gives insufficient analytical attention to the

---

[1] A widely used legal dictionary adopts the same view. According to *Black's Law Dictionary* 1581 (9th ed 2009), the noun "surrender" means "[t]he act of yielding to another's power or control."

7

pertinent definitions of "surrender."  The definitions all require a volitional act of submitting, relinquishing, or yielding.  But the majority fails to acknowledge that the pertinent definitions either include yielding behavior that expressly responds to the power of another or they say nothing about whether the yielding behavior must be purely voluntary.  Citing examples that purportedly support the state, the majority says,

> "Other definitions, however, are consistent with the state's proposed reading of the rule.  The first definition states that the term means 'to make a surrender in law of **:** as * * * to deliver (the principal) into lawful custody.'  Similarly, an alternative definition is 'to give up completely or agree to forgo.'  In both examples, the term 'surrender' is used to refer to a voluntary act of delivery or relinquishment, not in response to force or compulsion."

*State v. Moss*, ___ Or ___, ___ P3d ___ (2012) (June 7, 2012) (slip op at 3-4) (quoting *Webster's* at 2301-02).

The majority's statement about those examples is incorrect.  The reference to "deliver[ing] (the principal) into lawful custody" says nothing about whether the act of delivering is, or must be, a response to any form of compulsion or pressure.  The same is true of the example "to give up completely or agree to forgo."[2]

The majority also fails to observe that one of the listed definitions precisely fits the sort of yielding behavior that this case involves:  "**3 a :** to give (oneself) up into

---

[2]      The majority's quotation of the cited example is incomplete.  The full text of the example in *Webster's* suggests that the example refers more logically to property or, perhaps, a public office, not a person's custody, and does not at all exclude yielding behavior in response to authority or pressure from external circumstances.  In no way does the example confine itself solely to a purely voluntary choice, as the majority states.

8

the power of another esp. as a prisoner." *Id.* (slip op at 3) (quoting *Webster's* at 2301-02). Clearly, that example refers to a prisoner's conduct in submitting to a police officer's power or authority to arrest pursuant to a warrant. That action describes a "surrender," regardless of whether the prisoner chose to yield under the compulsion of superior force or purely from an unpressured desire to return to custody. In focusing on the presence of the terms "agree" and "assent" in *other* definitional examples that have nothing to do with the context of this case, the majority simply refuses to see that a "surrender" includes the act of yielding to a police officer's authority to arrest, whether or not the arrestee subjectively desires to submit to that arrest.[3] Assuming *arguendo* that there is an interpretive task here, it is only to confirm that the judges who adopted ORAP 8.05(3) intended to adopt the most plainly applicable sense of the term "surrender" for the present context rather than another sense, used in distinguishable contexts, requiring that a choice to submit be free of any coercive influence by the police or an arrest warrant.

That point deserves emphasis. A quick reading of the opinions in this case may lead a reader to conclude that the legal point that divides the majority opinion and this dissent concerns the voluntariness of a defendant's conduct in submitting to police custody following an escape. That is not correct. Both the majority and this dissent agree that the term "surrender" refers to volitional conduct by the surrendering party, *i.e.*,

---

[3]    Properly viewed, a "surrender" in this context calls for an action that amounts to yielding or submitting to the officer's authority to arrest. In the absence of such an action, the bare fact that the police have recaptured a defendant would not demonstrate that the defendant surrendered.

yielding behavior consequent on the actor's choice to submit to the power or authority of another. Every definition of "surrender" reflects that common element.

What divides the majority opinion and this dissent is an analytical twist by the majority that finds no support whatever in the definitions of "surrender." The majority trumps any consideration of defendant's factual assertion that he surrendered to the police by pointing to the fact that the police possessed a warrant for defendant's arrest and, at some unidentified point during the event that resulted in defendant's return to custody, the police delivered the warrant to defendant. The majority's incorrect focus on the service of an arrest warrant on defendant simply evades the central issue that ORAP 8.05(3) requires us to answer: After he escaped or absconded from supervision, did defendant surrender to the state's control? It is clear that nothing in the ordinary meaning of "surrender" precludes a defendant from volitionally choosing to submit to police authority, and thus fully surrender to the police, regardless of whether the police also possess or serve an arrest warrant at some point.

To create some support for its view, the majority refers to several uses of the term "surrender" in very different legal settings. But that effort only strengthens defendant's position here. For example, the majority refers to the term "surrender" in ORS 73.0604(1)(a) as one that refers to "an intentional voluntary act, one that is not taken in response to force or compulsion." *Id.* (slip op at 4). The reason that that is true is not because of the ordinary meaning of "surrender," but rather because, in the text of that statute, the legislature expressly limited application of the statute to an intentional voluntary act. Thus, that statute provides that one may discharge another's obligation to

10

pay under an instrument "[b]y an intentional voluntary act, such as surrender of the instrument."  ORS 73.0604(1)(a).  The textual qualifications that accompany that usage of "surrender" deprive that example of any persuasive weight in favor of the state's position.

The majority cites the authority of the Governor under ORS 133.817, at the Governor's discretion, either to surrender a prisoner in response to another state executive's demand or to hold that person in this state for trial, conviction and punishment.  The majority labels the Governor's act under that statute as "discretionary," and thus purely voluntary.  *Moss*, ___ Or at ___ (slip op at 4).  No one could disagree. But that, again, results from the legislature's incorporation of text in the statute that makes that conclusion inescapable.  As the legislature recognized, that is not a conclusion that flows from the unmodified term "surrender," and the majority does not advance the discussion here by refusing to recognize that fact.

The majority next offers a lengthy discussion of the history of what some courts have called the "fugitive dismissal rule."  Significantly for our purposes, that "rule" refers in almost all cases not to a statute or court rule, but to an exercise of appellate court discretion, varying with the facts of the individual case, to dismiss (or decline to dismiss) the appeal of a criminal defendant who had escaped from custody during the pendency of an appeal.  What the majority cites are the various explanations given by those courts for their particular discretionary choices; they are not court decisions interpreting the words of a positive statute or rule, like ORAP 8.05(3), that incorporates the concept of "surrender."

11

The majority loses track of that distinction with serious adverse consequences in this case. The majority explains that some courts, in explaining a dismissal, identified the problem as one concerning the enforceability of the appellate court judgment. Those decisions pointed to the fact that an escaped fugitive was not "where he can be made to respond to any judgment we may render." *Smith v. United States*, 94 US 97, 97, 24 L Ed 32 (1876). In addition to rationalizing a dismissal of the appeal, that explanation also justified the court in continuing the appeal if, after escaping, the defendant returned to custody, because the defendant once again was in a place where he could be subjected to the court's judgment.

Other courts, however, adopted different, more punitive reasoning to support the dismissal of fugitive appeals. Those courts asserted that an escape constituted a waiver by the defendant of his or her right to appeal, or that the act of escaping "disentitled" the defendant to continue with the appeal. *See Ortega-Rodriguez v. United States*, 507 US 234, 240, 113 S Ct 1199, 122 L Ed 2d 581 (1993) (the Court noted that it had identified that additional justification for dismissal in *Molinaro v. New Jersey*, 396 US 365, 366, 90 S Ct 498, 24 L Ed 2d 586 (1970)). The upshot of the latter reasoning was that the basis for a dismissal was established at the point of an escape. Any subsequent surrender or other return to custody by the defendant would have no effect on the court's dismissal decision, because the only relevant fact was whether defendant had escaped.

The cases cited by the majority never address what may constitute a "surrender" by an escaped fugitive, because a surrender is beside the point to each line of

12

reasoning. Courts adhering to an enforceability rationale focused on whether the defendant was once again in a place where the court could enforce its judgment, and it mattered little whether the defendant had returned to custody through a surrender to the police or a recapture by the police. Courts following the waiver or disentitlement line of reasoning, as noted, focused solely on whether the defendant had escaped, and they logically disregarded as irrelevant any subsequent surrender by the defendant.

One case, however, does discuss the meaning of a fugitive dismissal rule, including a surrender standard, that one state adopted. The case demonstrates the importance of correctly interpreting the text that a lawmaker has employed regarding the concept of surrender. In *Estelle v. Dorrough*, 420 US 534, 535 n 1, 95 S Ct 1173, 43 L Ed 2d 377 (1975), the Court considered a Texas statute, Texas Code of Criminal Procedure Ann, Art 44.09, which provided:

"If the defendant, pending an appeal in the felony case, makes his escape from custody, the jurisdiction of the Court of Criminal Appeals shall no longer attach in the case. Upon the fact of such escape being made to appear, the court shall, on motion of the State's attorney, dismiss the appeal; but the order dismissing the appeal shall be set aside if it is made to appear that the defendant has voluntarily returned within ten days to the custody of the officer from whom he escaped; and in cases where the punishment inflicted by the jury is death or confinement in an institution operated by the Department of Corrections for life, the court may in its discretion reinstate the appeal if the defendant is recaptured or voluntarily surrenders within thirty days after such escape."

That statute established different appellate dismissal procedures based on the severity of the punishment imposed in the trial court. An escape in all felony cases meant that the appellate jurisdiction of the Texas Court of Criminal Appeals no longer attached. In cases involving a sentence less than death, the appellate court was required

13

to dismiss the appeal unless "the defendant has voluntarily returned within ten days to the custody of the officer from whom he escaped." However, for cases involving a sentence of life in prison or death, the statute granted discretion to the appellate court to reinstate the appeal "if the defendant is recaptured or voluntarily surrenders within thirty days after such escape."

The Court considered, but rejected, a challenge asserting that the two classifications in the statute lacked a rational relation to its purpose. *Estelle* is helpful here because the Texas statute considered in that case is, or appears to be, a prototype for ORAP 8.05(3), except that Oregon's appellate court rule omits the adverb "voluntarily" that the Texas statute used twice. That word in the Texas statute confirmed that a return to custody or surrender must be strictly voluntary to avoid dismissal of the appeal. The Texas court had noted that the statute "encourages voluntary surrenders." *Id.* at 537 (*citing Rodriguez v. State*, 457 SW2d 555, 556 (Tex Crim App 1970)). But the omission of the term "voluntarily" in Oregon's rule indicates that Oregon's rule protects the appeal if a surrender occurs whether the surrender reflects either an uncoerced choice or a willingness to give up in the face of a warrant or superior police power. The textual contrast between the Texas statute and ORAP 8.05(3) regarding the term "surrender" could not be more vivid, but the majority does not address that matter; the majority does not cite or discuss the Texas statute examined in *Estelle*.

The majority attempts to link Oregon to the branch of case law that is most punitive to escaped criminal defendants -- the "waiver" or "disentitlement" branch -- by citing this court's 1927 decision in *State v. Broom*, 121 Or 202, 253 P 1042 (1927).

14

*Broom* identified all the variant reasons, discussed above, that many other courts had relied on to justify dismissing appeals and referred in a sentence to "many rulings of other courts" precluding an appeal by an escaped fugitive "unless he resubmits himself to the custody of the law and the jurisdiction of the court." *Id.* at 206-07. But *Broom* did not adopt any of the cited case decisions as Oregon law. The court disposed of the appeal in *Broom* on grounds that rendered the discussion of the "fugitive dismissal rule" *dictum*. Nothing in the record indicates that ORAP 8.05(3) was intended to adopt the "resubmission" comment in *Broom* as the meaning of the term "surrender."

The majority cites two decisions of the Court of Appeals as part of the "context" that preceded the adoption of ORAP 8.05(3) in 1993. *See Moss*, ___ Or at ___ (slip op at 10-11) (citing *State v. Sterner*, 124 Or App 439, 862 P2d 1321 (1993) and *State v. Lundahl*, 130 Or App 385, 882 P2d 644 (1994)). Both cases cited this court's *dictum* in *Broom*, and the United States Supreme Court decision in *Ortega-Rodriguez*, to justify dismissing the appeals of absconded defendants pursuant to inherent court authority. But the conclusions in those Court of Appeals decisions are not precedents that bind this court. The majority cannot evade that fact by suggesting that those decisions were "context" for the adoption of ORAP 8.05(3). They are not. This court had discussed the basis of appellate court authority to dismiss the appeal of an absconding criminal defendant in only two cases, *Broom* and *City of Portland v. Parchen*, 113 Or 209, 231 P 980 (1925), and, in each case, the court's discussion of that question amounted to *dictum* and did not establish a binding rule of this court. Moreover, those Court of Appeals decisions do not address the meaning of the term "surrender" in ORAP

8.05(3), because the disputes in those cases arose before the adoption of ORAP 8.05(3). Thus, the two Court of Appeals decisions are both nonbinding and off the point of this case.

The majority concludes that the committee that developed and recommended adoption of ORAP 8.05(3) probably intended to incorporate the "waiver" or "disentitlement" line of reasoning presented in some decisions of the United States Supreme Court and other courts addressing fugitive dismissals. It draws that conclusion from a reference in a memorandum dated March 22, 1993, between employees of the Oregon Department of Justice and then-Solicitor General Virginia Linder. The memorandum, which *may* have been shared (we cannot know whether it was in fact shared) with the Oregon Rules of Appellate Procedure Committee, enclosed a proposed form of ORAP 8.05(3). The proposal used the term "surrender" but did not define or explain that term. The memorandum mentioned that the United States had "a similar court rule," but did not cite or discuss that rule.

In searching for the intended meaning of "surrender" in ORAP 8.05(3), the majority will not find it in the memorandum mentioned above. That document does not purport to reflect the thinking, let alone the intent, of the committee that recommended adoption of ORAP 8.05(3). It is the intent of the adopting committee (and, ultimately the Chief Justice and Chief Judge) that counts, not the opinion of persons outside the committee. The committee ultimately adopted a proposed rule, but did not indicate that it incorporated some uncited federal law in doing so.

The majority attributes significance to the memorandum by making the

16

conclusory statement that the memorandum used the term "surrender" in a way that "fairly obviously refers to a voluntary act on the part of the absconding defendant." *Moss*, ___ Or at ___ (slip op at 13). In fact, the memorandum states nothing about the meaning of the word "surrender." Additionally, as I explained, the term "surrender" refers most logically, in this context, to both a purely voluntary submission to an officer's authority to arrest *and* a submission or yielding to a police officer in response to his or her superior power, force, or authority. The majority has no justification for confining the meaning of "surrender" in a way that precludes its ordinary application in the context of a defendant's submission to an arresting officer's authority.

The majority also errs in concluding that the reference in the memorandum to the "similar court rule" of the United States Supreme Court meant that the proposed rule adopted the "waiver" and "disentitlement" rationales for dismissal that the Court had addressed in *Ortega-Rodriguez.* The flaw in that conclusion is clear because the words of ORAP 8.05(3) contradict it. Oregon's rule does not contain any wording indicating that, by escaping or absconding, a criminal defendant "waives" or is "disentitled" to pursue an appeal. As explained above, the rule provides that an escape only entitles the state to *move* for dismissal. The court loses authority under the rule to grant a motion to dismiss if the defendant surrenders at any time before the court decides the motion. If anyone advises the court that a surrender has occurred, the state remains obligated to sustain its motion by demonstrating that the defendant "has not surrendered." The continued viability of the appeal of an escaped defendant through the time of the appellate court's decision, and the significance under the rule of the assertion that the defendant has

17

surrendered, combine to contradict the majority's claim that an escape constitutes a waiver of the right to appeal. That conclusion simply overlooks the substance of Oregon's rule.

I turn now to a consideration of the record in this case. In response to the state's motion to dismiss, defendant advised the Court of Appeals in writing that he had surrendered to the police, that the warrant for his arrest was served on August 22, 2010, that he was no longer a fugitive, that the police knew of his whereabouts, and that he was present in the trial court for a hearing on this case on August 31, 2010.

In response, the state submitted no other facts. In particular, the state made no showing that defendant's arrest entailed no submission on his part to the authority of the arresting officers.

The majority examines the foregoing record and concludes, contrary to that record, that defendant never advised the Court of Appeals that he had surrendered. Instead, the majority reviews defendant's factual assertions about his surrender and concludes, "[t]hat does not constitute 'surrender' within the meaning of the rule." *Id.* at ___ (slip op at 15).

The majority's approach stands the rule on its head. The rule's third sentence requires only that a party must *advise* the court that the defendant has surrendered. Once that advice occurs, the rule requires the state, as the moving party, to show that the appellant "has not surrendered," which is the condition that must exist before the court has the authority to dismiss the appeal. But under the majority's reading of the rule, defendant failed to advise the court that he had surrendered to the police, even

18

though he did so explicitly state, because defendant *also* indicated that, at some point, the police had served an arrest warrant upon him. That reading of the rule, as noted, erroneously relieves the state of its responsibility under the rule to demonstrate that "the [defendant] has not surrendered at the time the motion is decided by the court." ORAP 8.05(3).

As a consequence of the majority's reconstruction of the rule, the state prevails in effecting the dismissal of defendant's appeal without making any showing about the circumstances of defendant's return to custody beyond the service at some point of an arrest warrant. For all that the record discloses, defendant's submission to the police may have been completed without regard to the arrest warrant. The majority relieves the state of any obligation to submit the necessary facts to the court on that key question.

Oregon's rule, as it stands after today's opinion, authorizes the dismissal of the appeal of a criminal defendant who escapes or absconds, or even a probationer who violates probation, and is later arrested, even if the defendant fully cooperates with and submits to the arrest, *if* the police possess and serve an arrest warrant on the defendant. Where the defendant's whereabouts are fully known to the court and the state, and the defendant figuratively is sitting in court awaiting the outcome of his or her appeal, there seems to me to be little or no justification to authorize dismissal of the appeal and, thus, to nullify the defendant's statutory right to appeal. If Oregon's rule now purports to authorize an appellate court to dismiss an appeal even though the defendant has submitted to the state's authority and is in custody, then the rule undermines the statutory

right of appeal. To remedy the problem identified above, the Chief Justice and the Chief Judge should amend ORAP 8.05(3) to focus the rule on whether the defendant has *returned to custody* following an escape, not on whether the defendant surrendered to the police purely voluntarily, or simply has been recaptured. If the Chief Justice and Chief Judge decline to do so, the legislature should step in to protect the opportunity of every citizen to appeal a criminal judgment.

For the foregoing reasons, I dissent from the majority's affirmance of the decision of the Court of Appeals to dismiss defendant's appeal.

De Muniz and Walters, JJ., join this dissenting opinion.