*60 DURHAM, J.,
dissenting.
Following his conviction for second-degree disorderly conduct and other crimes, defendant appealed to the Court of Appeals, contending that the trial court should have granted his motion for judgment of acquittal of the disorderly conduct charge. While the appeal was pending, the state moved to dismiss the appeal under ORAP 8.05(3), arguing that defendant had escaped or absconded from supervision and was a fugitive from justice.
ORAP 8.05(3) provides, in part:
“If a defendant in a criminal case, *** on appeal of an adverse decision, escapes or absconds from custody or supervision, the respondent on appeal may move for dismissal of the appeal. If the appellant has not surrendered at the time the motion is decided by the court, the court may dismiss the appeal or judicial review. If the court has not been advised otherwise, the court may assume that the appellant has not surrendered when the court considers and decides the motion.”
What governs the outcome in this case is the intended meaning of the phrase “has not surrendered” in that rule. The majority presents a lengthy history of the treatment accorded to appeals by escaped prisoners in the state and federal courts of other jurisdictions and, in dictum, comments by this court in one case about that subject. The majority attributes great interpretative weight to its historical recital. I do not, for reasons that I shall explain. The majority then relies on its view of prerule case law and decisions of the Court of Appeals to narrow the meaning of “surrendered” in ORAP 8.05(3) so that it excludes a voluntary surrender if the police possess or serve an arrest warrant on the defendant. Additionally, the majority announces that the rule now imposes a waiver of defendant’s statutory right to appeal, despite any support for that conclusion in the rule’s text, and shifts to defendant the burden to demonstrate that he has surrendered, despite the rule’s contrary phrasing (“has not surrendered”) and overall structure. That simply erases the state’s obligation to prove a fact necessary to sustain the state’s motion to dismiss. In committing those interpretive errors, the majority places the operation of *61 ORAP 8.05(3) in a position of maximum conflict, rather than cooperation, with every party’s statutory right to appeal a judgment in a criminal action. See ORS 138.020 (“Either the state or the defendant may as a matter of right appeal from a judgment in a criminal action in the cases prescribed in ORS 138.010 to 138.310, and not otherwise.”). Because the majority’s gloss on ORAP 8.05(3) is both wrong and unnecessary, I respectfully dissent.
I briefly review the pertinent facts. At the time of defendant’s conviction, the court placed defendant on probation and required him to pay certain fines and fees, among other conditions. Defendant appealed from the court’s judgment, challenging the disorderly conduct conviction. On July 15,2010, the trial court, acting on information supplied by the appointed probation officer, issued an order to show cause to defendant, alleging that he had failed to pay the fines and fees, and ordering him to appear on August 17, 2010, to show cause why the court should not revoke probation. The state mailed the order to defendant’s last known address.
On August 10, 2010, the probation officer filed a “Notice of Community Service Non-Compliance,” which recited that defendant “[had] not been seen or heard from since 6/21/10” and had “[flailed to work the ordered monthly minimum of hours.”The notice also recited that the probation officer had called defendant’s telephone about a community service contact and a female had answered and informed defendant of the call. The female relayed defendant’s request to call back in 10 minutes; defendant did not return the probation officer’s call. Notably, the record contains no indication that anyone served the probation officer’s notice on defendant.
On August 17,2010, the trial court entered an order finding that defendant had failed to appear to show cause and that “defendant has absconded from probation.” Neither the order nor any other part of the record explains whether the court based that conclusion on defendant’s failure to pay fines and fees, as alleged in the order to show cause, or on some other behavior not set out in the order to show cause, such as defendant’s failure to appear for the show cause *62 hearing. The court issued a bench warrant for defendant’s arrest.
On August 20, 2010, the state filed a motion in the Court of Appeals to dismiss defendant’s appeal of the disorderly conduct conviction. The state alleged that defendant had absconded from supervision and was a fugitive from justice.
The police served the trial court’s bench warrant on defendant on August 22, 2010. The record contains no information from the police about whether defendant yielded to the authority of the police when they served the warrant.
Defendant appeared before the trial court on August 23 and 24, 2010. He signed a conditional release agreement on August 25,2010. Defendant contends, and the record appears to confirm, that he has been subject to the court’s jurisdiction ever since and was no longer a fugitive from justice in any sense.
On September 2, 2010, defendant answered the state’s motion to dismiss, asserting that he had surrendered to the police, that the Court of Appeals had no authority to dismiss his appeal because he was “no longer” a fugitive due to his surrender and court appearance, and that the state was fully aware of his whereabouts. On September 14, 2010, the Court of Appeals entered an order dismissing defendant’s appeal. The order dismissing defendant’s appeal stated:
“[The state] has moved to dismiss this appeal on the ground that [defendant] has absconded from the jurisdiction of the court as shown by his failure to maintain contact with his probation officer and to complete community service. See generally ORAP 8.05(3); State v. Fettel, 210 Or App 404, 150 P3d 1076 (2007). The motion is granted.”
The order did not address whether defendant had surrendered before the court decided the state’s motion.
Before turning to the interpretive problem presented here, I draw attention to the fact that ORAP 8.05(3) may not apply to defendant’s conduct here. In State v. Robbins, 345 Or 28, 33, 188 P3d 262 (2008), this court pointed out that ORAP 8.05(3) authorizes the state to move *63 for dismissal only if defendant “escapes or absconds from custody or supervision.” Robbins explained that, to establish that a defendant has escaped or absconded, the state must show that the defendant intended to evade justice by flight, by hiding, by avoiding probation supervision, or by some combination of those actions. Id. at 36. According to Robbins, it is not sufficient that the defendant failed to attend one meeting with a probation officer or could not be located for a brief time. Id.
In this case, the state relied in its motion to dismiss on the trial court’s conclusion in the show cause proceeding that defendant had absconded from probation. But the factual claim that initiated that proceeding in the trial court concerned only defendant’s alleged failure to pay fines or fees, as ordered in the judgment of his conviction. That conduct, if proven, does not constitute escaping or absconding from custody or supervision. Even assuming arguendo that the state could expand the scope of that hearing without notice to defendant, the state does not explain how the other problem that it raised — an unreturned telephone call seeking a community service supervisor’s contact information — amounted to escaping or absconding from supervision. Finally, defendant’s nonappearance for the show cause proceeding was a serious matter, but so was the missed meeting with a probation officer in Robbins. The state does not explain why the court should reach a different result here than that reached in Robbins with respect to whether missing an important appointment constitutes escaping or absconding from supervision.
Defendant, however, does not assert in this court that his behavior does not amount to escaping or absconding from supervision. He focuses, instead, on his contention that the Court of Appeals lacked authority to dismiss his appeal because, when the court decided the state’s motion, the record was insufficient to show that he “had not surrendered” under ORAP 8.05(3).
ORAP 8.05(3) was adopted in 1993 by an order signed by the Chief Justice of this court and the Chief Judge of the Court of Appeals. Our objective here is to discover and give effect to the intent of those judicial officials in *64 enacting the rule in 1993. The majority correctly notes that, in construing ORAP 8.05(3), we must apply the same principles of interpretation that ordinarily apply to the interpretation of statutes and administrative rules.
ORAP 8.05(3) consists of three sentences. By its plain terms, the first sentence of ORAP 8.05(3) permits the state to move for dismissal of an appeal if a criminal defendant “escapes or absconds from custody or supervision.” The second sentence of the rule provides that, “ [i] f the [defendant] has not surrendered at the time the motion is decided by the court, the court may dismiss the appeal.” The prefatory clause of the second sentence makes it plain that an appellate court obtains legal authority to grant the state’s motion for dismissal only in the event that a negative fact exists, i.e., that “the [defendant] has not surrendered” at the time that the court decides the state’s motion. See Blacknall v. Board of Parole, 348 Or 131, 140, 229 P3d 595 (2010) (use of the word “if” in context of prefatory phrase sets out a condition that must be met and a result that may occur only “in the event that” or “so long as” that condition is satisfied). The third sentence in ORAP 8.05(3) adds an additional layer to the analysis. That sentence, which provides that, “ [i] f the court has not been advised otherwise, the court may assume that the [defendant] has not surrendered when the court considers and decides the motion,” permits the court to assume the truth of the negative fact that a defendant “has not surrendered” unless the court is “advised otherwise,” i.e., if either party informs the court that the defendant has surrendered.
The meaning of the term “surrender” is key to an understanding of the second and third sentences of ORAP 8.05(3). Webster’s supplies the following definition of the verb “surrender”:
“1 : to make a surrender in law of : as *** c : to deliver (the principal) into lawful custody. 2 a : to yield to the power, control, authority, or possession of another : give or deliver up possession of upon compulsion or demand: cease trying to retain or control and agree to yield [examples: surrendered the fort; forced to surrender the ship] * * * b : to give up completely or agree to forgo esp. in favor of another : abandon, resign, or relinquish possession of [usu] for the *65 sake of another : assent to loss of possession or exercise of or power or control over [example: surrendered his chair to the lady] * * * 3 a : to give (oneself) up into the power of another esp. as a prisoner b :* * * : to give oneself up into the power of another : YIELD [examples: ordered the troops to surrender; the enemy must soon surrender]
Webster’s Third New Int’l Dictionary 2301-02 (unabridged ed 2002).
The phrase “has not surrendered” in ORAP 8.05(3) refers to an action that has not occurred. Applying the elements set out in the definition and considering the context of this case, that action consists of yielding oneself to the power, control, authority, or possession of the state, such as submitting to the custody of an arresting officer.[1] The pertinent phrase in the rule, “has not surrendered,” thus describes a condition in which the required action, i.e., the yielding of oneself to state authority, has not occurred.
The majority correctly begins with the ordinary dictionary definitions of “surrender.” The majority posits that some definitions support defendant while other definitions support the state, and concludes from that review that the arguments of each side are plausible and that the term “surrender” is ambiguous.
In my view, the majority gives insufficient analytical attention to the pertinent definitions of “surrender.” The definitions all require a volitional act of submitting, relinquishing, or yielding. But the majority fails to acknowledge that the pertinent definitions either include yielding behavior that expressly responds to the power of another or they say nothing about whether the yielding behavior must be purely voluntary. Citing examples that purportedly support the state, the majority says,
“Other definitions, however, are consistent with the state’s proposed reading of the rule. The first definition states that the term means ‘to make a surrender in law of: as * * * to deliver (the principal) into lawful custody.’ Similarly, an alternative definition is ‘to give up completely or agree *66 to forgo.’ In both examples, the term ‘surrender’ is used to refer to a voluntary act of delivery or relinquishment, not in response to force or compulsion.”
352 Or at 49 (quoting Webster’s at 2301-02).
The majority’s statement about those examples is incorrect. The reference to “delivering] (the principal) into lawful custody” says nothing about whether the act of delivering is, or must be, a response to any form of compulsion or pressure. The same is true of the example “to give up completely or agree to forgo.”[2]
The majority also fails to observe that one of the listed definitions precisely fits the sort of yielding behavior that this case involves: “3 a : to give (oneself) up into the power of another esp. as a prisoner.” Id. (quoting Webster’s at 2301-02). Clearly, that example refers to a prisoner’s conduct in submitting to a police officer’s power or authority to arrest pursuant to a warrant. That action describes a “surrender,” regardless of whether the prisoner chose to yield under the compulsion of superior force or purely from an unpressured desire to return to custody. In focusing on the presence of the terms “agree” and “assent” in other definitional examples that have nothing to do with the context of this case, the majority simply refuses to see that a “surrender” includes the act of yielding to a police officer’s authority to arrest, whether or not the arrestee subjectively desires to submit to that arrest.[3] Assuming arguendo that there is an interpretive task here, it is only to confirm that the judges who adopted ORAP 8.05(3) intended to adopt the most plainly applicable sense of the term “surrender” for the present context rather than another sense, used in distinguishable contexts, requiring that a choice to submit *67 be free of any coercive influence by the police or an arrest warrant.
That point deserves emphasis. A quick reading of the opinions in this case may lead a reader to conclude that the legal point that divides the majority opinion and this dissent concerns the voluntariness of a defendant’s conduct in submitting to police custody following an escape. That is not correct. Both the majority and this dissent agree that the term “surrender” refers to volitional conduct by the surrendering party, i.e., yielding behavior consequent on the actor’s choice to submit to the power or authority of another. Every definition of “surrender” reflects that common element.
What divides the majority opinion and this dissent is an analytical twist by the majority that finds no support whatever in the definitions of “surrender.” The majority trumps any consideration of defendant’s factual assertion that he surrendered to the police by pointing to the fact that the police possessed a warrant for defendant’s arrest and, at some unidentified point during the event that resulted in defendant’s return to custody, the police delivered the warrant to defendant. The majority’s incorrect focus on the service of an arrest warrant on defendant simply evades the central issue that ORAP 8.05(3) requires us to answer: After he escaped or absconded from supervision, did defendant surrender to the state’s control? It is clear that nothing in the ordinary meaning of “surrender” precludes a defendant from volitionally choosing to submit to police authority, and thus fully surrender to the police, regardless of whether the police also possess or serve an arrest warrant at some point.
To create some support for its view, the majority refers to several uses of the term “surrender” in very different legal settings. But that effort only strengthens defendant’s position here. For example, the majority refers to the term “surrender” in ORS 73.0604(l)(a) as one that refers to “an intentional voluntary act, one that is not taken in response to force or compulsion.” Id. at 49. The reason that that is true is not because of the ordinary meaning of “surrender,” but rather because, in the text of that statute, the legislature expressly limited application of the statute to an intentional *68 voluntary act. Thus, that statute provides that one may discharge another’s obligation to pay under an instrument “[b]y an intentional voluntary act, such as surrender of the instrument.” ORS 73.0604(l)(a). The textual qualifications that accompany that usage of “surrender” deprive that example of any persuasive weight in favor of the state’s position.
The majority cites the authority of the Governor under ORS 133.817, at the Governor’s discretion, either to surrender a prisoner in response to another state executive’s demand or to hold that person in this state for trial, conviction and punishment. The majority labels the Governor’s act under that statute as “discretionary,” and thus purely voluntary. 352 Or at 50. No one could disagree. But that, again, results from the legislature’s incorporation of text in the statute that makes that conclusion inescapable. As the legislature recognized, that is not a conclusion that flows from the unmodified term “surrender,” and the majority does not advance the discussion here by refusing to recognize that fact.
The majority next offers a lengthy discussion of the history of what some courts have called the “fugitive dismissal rule.” Significantly for our purposes, that “rule” refers in almost all cases not to a statute or court rule, but to an exercise of appellate court discretion, varying with the facts of the individual case, to dismiss (or decline to dismiss) the appeal of a criminal defendant who had escaped from custody during the pendency of an appeal. What the majority cites are the various explanations given by those courts for their particular discretionary choices; they are not court decisions interpreting the words of a positive statute or rule, like ORAP 8.05(3), that incorporates the concept of “surrender.”
The maj ority loses track of that distinction with serious adverse consequences in this case. The majority explains that some courts, in explaining a dismissal, identified the problem as one concerning the enforceability of the appellate court judgment. Those decisions pointed to the fact that an escaped fugitive was not “where he can be made to respond to any judgment we may render.” Smith v. United States, 94 US 97, 97, 24 L Ed 32 (1876). In addition to rationalizing a dismissal of the appeal, that explanation also justified the *69 court in continuing the appeal if, after escaping, the defendant returned to custody, because the defendant once again was in a place where he could be subjected to the court’s judgment.
Other courts, however, adopted different, more punitive reasoning to support the dismissal of fugitive appeals. Those courts asserted that an escape constituted a waiver by the defendant of his or her right to appeal, or that the act of escaping “disentitled” the defendant to continue with the appeal. See Ortega-Rodriguez v. United States, 507 US 234, 240, 113 S Ct 1199, 122 L Ed 2d 581 (1993) (the Court noted that it had identified that additional justification for dismissal in Molinaro v. New Jersey, 396 US 365, 366, 90 S Ct 498, 24 L Ed 2d 586 (1970)). The upshot of the latter reasoning was that the basis for a dismissal was established at the point of an escape. Any subsequent surrender or other return to custody by the defendant would have no effect on the court’s dismissal decision, because the only relevant fact was whether defendant had escaped.
The cases cited by the majority never address what may constitute a “surrender” by an escaped fugitive, because a surrender is beside the point to each line of reasoning. Courts adhering to an enforceability rationale focused on whether the defendant was once again in a place where the court could enforce its judgment, and it mattered little whether the defendant had returned to custody through a surrender to the police or a recapture by the police. Courts following the waiver or disentitlement line of reasoning, as noted, focused solely on whether the defendant had escaped, and they logically disregarded as irrelevant any subsequent surrender by the defendant.
One case, however, does discuss the meaning of a fugitive dismissal rule, including a surrender standard, that one state adopted. The case demonstrates the importance of correctly interpreting the text that a lawmaker has employed regarding the concept of surrender. In Estelle v. Dorrough, 420 US 534, 535 n 1, 95 S Ct 1173, 43 L Ed 2d 377 (1975), the Court considered a Texas statute, Texas Code of Criminal Procedure Ann, Art 44.09, which provided:
“If the defendant, pending an appeal in the felony case, makes his escape from custody, the jurisdiction of the Court *70 of Criminal Appeals shall no longer attach in the case. Upon the fact of such escape being made to appear, the court shall, on motion of the State’s attorney, dismiss the appeal; but the order dismissing the appeal shall be set aside if it is made to appear that the defendant has voluntarily returned within ten days to the custody of the officer from whom he escaped; and in cases where the punishment inflicted by the jury is death or confinement in an institution operated by the Department of Corrections for life, the court may in its discretion reinstate the appeal if the defendant is recaptured or voluntarily surrenders within thirty days after such escape.”
That statute established, different appellate dismissal procedures based on the severity of the punishment imposed in the trial court. An escape in all felony cases meant that the appellate jurisdiction of the Texas Court of Criminal Appeals no longer attached. In cases involving a sentence less than death, the appellate court was required to dismiss the appeal unless “the defendant has voluntarily returned within ten days to the custody of the officer from whom he escaped.” However, for cases involving a sentence of life in prison or death, the statute granted discretion to the appellate court to reinstate the appeal “if the defendant is recaptured or voluntarily surrenders within thirty days after such escape.”
The Court considered, but rejected, a challenge asserting that the two classifications in the statute lacked a rational relation to its purpose. Estelle is helpful here because the Texas statute considered in that case is, or appears to be, a prototype for ORAP 8.05(3), except that Oregon’s appellate court rule omits the adverb “voluntarily” that the Texas statute used twice. That word in the Texas statute confirmed that a return to custody or surrender must be strictly voluntary to avoid dismissal of the appeal. The Texas court had noted that the statute “encourages voluntary surrenders.” Id. at 537 (citing Rodriguez v. State, 457 SW2d 555, 556 (Tex Crim App 1970)). But the omission of the term “voluntarily” in Oregon’s rule indicates that Oregon’s rule protects the appeal if a surrender occurs whether the surrender reflects either an uncoerced choice or a willingness to give up in the face of a warrant or superior police power. The textual contrast between the Texas *71 statute and ORAP 8.05(3) regarding the term “surrender” could not be more vivid, but the majority does not address that matter; the majority does not cite or discuss the Texas statute examined in Estelle.
The majority attempts to link Oregon to the branch of case law that is most punitive to escaped criminal defendants — the “waiver” or “disentitlement” branch — by citing this court’s 1927 decision in State v. Broom, 121 Or 202, 253 P 1042 (1927). Broom identified all the variant reasons, discussed above, that many other courts had relied on to justify dismissing appeals and referred in a sentence to “many rulings of other courts” precluding an appeal by an escaped fugitive “unless he resubmits himself to the custody of the law and the jurisdiction of the court.” Id. at 206-07. But Broom did not adopt any of the cited case decisions as Oregon law. The court disposed of the appeal in Broom on grounds that rendered the discussion of the “fugitive dismissal rule” dictum. Nothing in the record indicates that ORAP 8.05(3) was intended to adopt the “resubmission” comment in Broom as the meaning of the term “surrender.”
The majority cites two decisions of the Court of Appeals as part of the “context” that preceded the adoption of ORAP 8.05(3) in 1993. See 352 Or at 54-55 (citing State v. Sterner, 124 Or App 439, 862 P2d 1321 (1993) and State v. Lundahl, 130 Or App 385, 882 P2d 644 (1994)). Both cases cited this court’s dictum in Broom, and the United States Supreme Court decision in Ortega-Rodriguez, to justify dismissing the appeals of absconded defendants pursuant to inherent court authority. But the conclusions in those Court of Appeals decisions are not precedents that bind this court. The majority cannot evade that fact by suggesting that those decisions were “context” for the adoption of ORAP 8.05(3). They are not. This court had discussed the basis of appellate court authority to dismiss the appeal of an absconding criminal defendant in only two cases, Broom and City of Portland v. Parchen, 113 Or 209, 231 P 980 (1925), and, in each case, the court’s discussion of that question amounted to dictum and did not establish a binding rule of this court. Moreover, those Court of Appeals decisions do not address the meaning of the term “surrender” in ORAP 8.05(3), because the disputes in those cases arose before the *72 adoption of ORAP 8.05(3). Thus, the two Court of Appeals decisions are both nonbinding and off the point of this case.
The majority concludes that the committee that developed and recommended adoption of ORAP 8.05(3) probably intended to incorporate the “waiver” or “disentitlement’Tine ofreasoningpresentedin some decisions of the United States Supreme Court and other courts addressing fugitive dismissals. It draws that conclusion from a reference in a memorandum dated March 22, 1993, between employees of the Oregon Department of Justice and then-Solicitor General Virginia Linder. The memorandum, which may have been shared (we cannot know whether it was in fact shared) with the Oregon Rules of Appellate Procedure Committee, enclosed a proposed form of ORAP 8.05(3). The proposal used the term “surrender” but did not define or explain that term. The memorandum mentioned that the United States had “a similar court rule,” but did not cite or discuss that rule.
In searching for the intended meaning of “surrender” in ORAP 8.05(3), the majority will not find it in the memorandum mentioned above. That document does not purport to reflect the thinking, let alone the intent, of the committee that recommended adoption of ORAP 8.05(3). It is the intent of the adopting committee (and, ultimately the Chief Justice and Chief Judge) that counts, not the opinion of persons outside the committee. The committee ultimately adopted a proposed rule, but did not indicate that it incorporated some uncited federal law in doing so.
The majority attributes significance to the memorandum by making the conclusory statement that the memorandum used the term “surrender” in a way that “fairly obviously refers to a voluntary act on the part of the absconding defendant.” 352 Or at 57. In fact, the memorandum states nothing about the meaning of the word “surrender.” Additionally, as I explained, the term “surrender” refers most logically, in this context, to both a purely voluntary submission to an officer’s authority to arrest and a submission or yielding to a police officer in response to his or her superior power, force, or authority. The majority has no justification for confining the meaning of “surrender” in a *73 way that precludes its ordinary application in the context of a defendant’s submission to an arresting officer’s authority.
The majority also errs in concluding that the reference in the memorandum to the “similar court rule” of the United States Supreme Court meant that the proposed rule adopted the “waiver” and “disentitlement” rationales for dismissal that the Court had addressed in Ortega-Rodriguez. The flaw in that conclusion is clear because the words of ORAP 8.05(3) contradict it. Oregon’s rule does not contain any wording indicating that, by escaping or absconding, a criminal defendant “waives” or is “disentitled” to pursue an appeal. As explained above, the rule provides that an escape only entitles the state to move for dismissal. The court loses authority under the rule to grant a motion to dismiss if the defendant surrenders at any time before the court decides the motion. If anyone advises the court that a surrender has occurred, the state remains obligated to sustain its motion by demonstrating that the defendant “has not surrendered.” The continued viability of the appeal of an escaped defendant through the time of the appellate court’s decision, and the significance under the rule of the assertion that the defendant has surrendered, combine to contradict the majority’s claim that an escape constitutes a waiver of the right to appeal. That conclusion simply overlooks the substance of Oregon’s rule.
I turn now to a consideration of the record in this case. In response to the state’s motion to dismiss, defendant advised the Court of Appeals in writing that he had surrendered to the police, that the warrant for his arrest was served on August 22, 2010, that he was no longer a fugitive, that the police knew of his whereabouts, and that he was present in the trial court for a hearing on this case on August 31, 2010.
In response, the state submitted no other facts. In particular, the state made no showing that defendant’s arrest entailed no submission on his part to the authority of the arresting officers.
The majority examines the foregoing record and concludes, contrary to that record, that defendant never advised the Court of Appeals that he had surrendered. Instead, the majority reviews defendant’s factual assertions *74 about his surrender and concludes, “[t]hat does not constitute ‘surrender’ within the meaning of the rule.” Id. at 58.
The majority’s approach stands the rule on its head. The rule’s third sentence requires only that a party must advise the court that the defendant has surrendered. Once that advice occurs, the rule requires the state, as the moving party, to show that the appellant “has not surrendered,” which is the condition that must exist before the court has the authority to dismiss the appeal. But under the majority’s reading of the rule, defendant failed to advise the court that he had surrendered to the police, even though he did so explicitly state, because defendant also indicated that, at some point, the police had served an arrest warrant upon him. That reading of the rule, as noted, erroneously relieves the state of its responsibility under the rule to demonstrate that “the [defendant] has not surrendered at the time the motion is decided by the court.” ORAP 8.05(3).
As a consequence of the majority’s reconstruction of the rule, the state prevails in effecting the dismissal of defendant’s appeal without making any showing about the circumstances of defendant’s return to custody beyond the service at some point of an arrest warrant. For all that the record discloses, defendant’s submission to the police may have been completed without regard to the arrest warrant. The majority relieves the state of any obligation to submit the necessary facts to the court on that key question.
Oregon’s rule, as it stands after today’s opinion, authorizes the dismissal of the appeal of a criminal defendant who escapes or absconds, or even a probationer who violates probation, and is later arrested, even if the defendant fully cooperates with and submits to the arrest, if the police possess and serve an arrest warrant on the defendant. Where the defendant’s whereabouts are fully known to the court and the state, and the defendant figuratively is sitting in court awaiting the outcome of his or her appeal, there seems to me to be little or no justification to authorize dismissal of the appeal and, thus, to nullify the defendant’s statutory right to appeal. If Oregon’s rule now purports to authorize an appellate court to dismiss an appeal even though the defendant has submitted to the state’s authority and is in *75 custody, then the rule undermines the statutory right of appeal. To remedy the problem identified above, the Chief Justice and the Chief Judge should amend ORAP 8.05(3) to focus the rule on whether the defendant has returned to custody following an escape, not on whether the defendant surrendered to the police purely voluntarily, or simply has been recaptured. If the Chief Justice and Chief Judge decline to do so, the legislature should step in to protect the opportunity of every citizen to appeal a criminal judgment.
For the foregoing reasons, I dissent from the majority’s affirmance of the decision of the Court of Appeals to dismiss defendant’s appeal.
De Muniz and Walters, JJ., join this dissenting opinion.

 A widely used legal dictionary adopts the same view. According to Black’s Law Dictionary 1581 (9th ed 2009), the noun “surrender” means “[t]he act of yielding to another’s power or control.”

 The majority’s quotation of the cited example is incomplete. The full text of the example in Webster’s suggests that the example refers more logically to property or, perhaps, a public office, not a person’s custody, and does not at all exclude yielding behavior in response to authority or pressure from external circumstances. In no way does the example confine itself solely to a purely voluntary choice, as the majority states.

 Properly viewed, a “surrender” in this context calls for an action that amounts to yielding or submitting to the officer’s authority to arrest. In the absence of such an action, the bare fact that the police have recaptured a defendant would not demonstrate that the defendant surrendered.